# Odbert *v.* Webster, Monessen, Bellevernon & Fayette City Street Railway Company, Appellant.

*Negligence—Street railway—Automobile—Collision between car and machine—Contributory negligence.*

1. In an action against an electric street railway company to recover damages for personal injuries sustained in a right angle collision between one of defendant's cars and an automobile which the plaintiff was driving, no recovery can be had where the evidence shows that the accident happened on a dark night; that the electric lights within the car and the headlight in front were burning; that the side windows of the car were open; that the car made considerable noise; that the plaintiff had seen the headlight a few seconds before the accident at two different points but had not stopped; and that when the automobile was crossing, it bore so much to the right that the right hand wheels ran off the planks at the crossing.

2. In such a case it was the duty of the plaintiff to stop, look and listen when he reached the crossing, and having failed to do so he was guilty of contributory negligence. The fact that the car was running at the time from twenty-five to thirty miles an hour is immaterial, and does not relieve the plaintiff of the charge of contributory negligence.

Argued April 16, 1912. Appeal, No. 13, April T., 1912, by defendant, from judgment of C. P. Westmoreland Co., Nov. T., 1909, No. 581, on verdict for plaintiff in case of H. N. Odbert v. Webster, Monessen, Bellevernon & Fayette City Street Railway Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Trespass to recover damages for injuries to plaintiff, his wife and children and for injuries to an automobile. Before DOTY, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $715. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*C. E. Whitten,* of *Gaither & Whitten,* with him *David McCloskey,* for appellant, cited: Tozer v. Ry. Co., 45 Pa. Superior Ct. 417; McCartney v. Traction Co., 27 Pa. Superior Ct. 222; Hess v. R. R. Co., 181 Pa. 492; Adams v. Trans. Co., 45 Pa. Superior Ct. 623; Brommer v. R. R. Co., 179 Fed. Repr. 577; Thane v. Traction Co., 191 Pa. 249; Yingst v. Ry. Co., 167 Pa. 438.

*Edward E. Robbins* and *Adam M. Wyant,* for appellee, cited: Muckinhaupt v. R. R. Co., 196 Pa. 213; Kaselicska v. Rys. Co., 220 Pa. 43; Kuntz v. R. R. Co., 206 Pa. 162; Keile v. Kahn, 30 Pa. Superior Ct. 416; Potter v. Ry. Co., 19 Pa. Superior Ct. 444; McCartney v. Traction Co., 27 Pa. Superior Ct. 222; Gallahan v. Traction Co., 184 Pa. 425; Haas v. Ry. Co., 202 Pa. 145; Hellregel v. Traction Co., 23 Pa. Superior Ct. 392; Conner v. Rys. Co., 216 Pa. 609; Gress v. Ry. Co., 14 Pa. Superior Ct. 87.

OPINION BY MORRISON, J., July 18, 1912:

This action of trespass resulted from an accident which occurred on November 22, 1908, where the public road crosses the tracks of the defendant company in Rostraver township, Westmoreland county, between Bellevernon and Monessen. There were nine people riding in an Olds five passenger automobile and in attempting to cross the defendant's track a collision occurred and one passenger was fatally injured and several others seriously. The plaintiff owned the automobile and was driving it himself. The accident occurred in the evening and it was quite dark. To sustain the plaintiff's case it was necessary for him to show that the accident was caused by the negligence of the defendant's servants and it must not appear that he was guilty of contributory negligence.

The defendant's learned counsel presented a single point, that, under all the evidence in the case your verdict must be for the defendant. This point was refused by the court and after verdict in favor of the plaintiff, there was a motion for judgment for defendant non obstante vere-

dicto and this was also refused and an exception granted and bill sealed for the defendant.

The learned court below considered that the evidence carried the case to the jury and especially that there was not evidence of such negligence on the part of the plaintiff as warranted the court in giving a binding instruction against him. It is not seriously contended that there was not sufficient evidence as to the negligence of the defendant to carry the case to the jury on that question. But as we read and understand the testimony of the plaintiff, as well as several other witnesses whose testimony is not inconsistent with his, the plaintiff was guilty of such contributory negligence that the learned court ought to have given a binding instruction in favor of the defendant on what we regard as clear evidence that the plaintiff was grossly negligent in attempting to cross the defendant's track in the manner disclosed by the testimony of himself and others.

The learned court, in the opinion on the motion for judgment non obstante veredicto, used the following language: "There is evidence that the accident happened after night; that the night was cloudy with some fog; that as plaintiff approached the trolley road he could have had an unobstructed view of the track in the direction from which the car came, for a distance of 1,000 feet, but at the edge of the track it could be seen about 200 feet; that plaintiff approached the crossing at a low rate of speed; that immediately before attempting to cross the track he almost stopped, and looked and listened for an approaching car; that he saw no headlight nor light of any kind until the crash; that he heard no alarm of bell or gong; that he was nearly across the track when the car struck the machine." The defendant's learned counsel sharply dissent from this statement of fact by the court and in their printed argument say: "When this opinion was rendered the notes of testimony had not been written out and filed, and consequently the learned trial judge did not have the testimony before him.

The above statement must have been made from his recollection of the testimony, aided by such private notes as he made during the trial. A close examination of the printed evidence discloses that the learned trial judge was mistaken in making the above statement. The plaintiff said he almost stopped before crossing the tracks of the Lake Erie Railroad, and that from that point he saw the headlight of the car in the distance." As we feel compelled to agree with the counsel on this question we will proceed to quote from the testimony which we think sustains the counsel in their contention. Before doing so, however, we will briefly describe the place of the accident. The Lake Erie Railroad, the defendant's street railway and the public highway ran generally parallel in that vicinity. The plaintiff was traveling along the highway with the Lake Erie Railroad on his right till he came to a point where the highway crossed the three tracks of said railroad and from that crossing to the place of the accident the highway ran between the Lake Erie and the defendant's tracks, and at the place of the accident the highway bore to the right, as the plaintiff was traveling, crossing the defendant's track, and the distance between the two crossings was about 170 feet. It seems to be conceded that in daylight there is an unobstructed view of the trolley track for a distance of from 1,500 feet to a half mile from either crossing.

We will now refer to the testimony, the plaintiff being on the stand: "Q. You brought the car, you say, almost to a standstill? A. Yes, sir. Q. Where did you do that? A. Where we commenced to slow down; when I got to within fifty feet of the railroad crossing. Q. That is the Lake Erie Railroad? A. Yes, sir. Q. Describe what you did then with reference to looking and listening for trains? A. We practically brought, as I stated, I practically brought the car to a stop and discussed this light and it was so far away that we had thousands of time and we went on. Q. What distance away was the light? A. Of course, I do not know but my judgment it was away the biggest part of a half mile. Q. In what direction? A. Towards

Monessen. Q. State what you did with reference to the other direction? A. We looked the other way and saw nothing. Q. What did you do with reference to listening? A. Well, of course we listened; of course you could not hear anything particularly, that is, unless it was a loud noise, on account of the car, the engine running. Q. Well, then what did you do? A. We went across the railroad. Q. How may tracks at that point? A. There is two main tracks and a switch, I believe. Q. What was on the switch, if anything? A. Nothing. Q. What further did you do? A. I immediately approached the other crossing. Q. That would be the crossing over what track? A. Over the street car track. Q. How many street car tracks are there? A. One. Q. What did you do before you came to the street car track? A. We looked there and I noticed a light away down the track, but the light was off, I should judge, 500 or 600 feet; didn't recognize it only as a switch light or something about the size of a lantern and went on. Q. What direction was that? A. Towards Monessen, this light. Q. What did you observe with reference to the other direction? A. We looked the other way and didn't see anything. Q. What did you do with reference to listen-, ing? A. Just the same as I said before; we listened of course, the running of the car—— Q. What further did you do? A. We listened and the car was running on the intermediate gear and we heard no extra sound or noise and went right on. . . . Q. You have stated you started forward after you looked; what then did you do? A. We went right on and when we were all over but the rear wheel in a diagonal shape—the left hind wheel was over clear across the track, I looked up or heard a noise and there was the street car not ten feet away; I saw the lights or seen the people first in the car."

The cross-examination of this witness developed the fact that he was quite familiar with the conditions at the place of the accident. He had frequently traveled along there in his automobile and on the cars. In his cross-examination he was referred to the place where he crossed

the Erie Railroad: "Q. And I believe you stated that you saw the headlight or some light and Mr. Farquhar also saw it and you commented upon it but concluded that it was the headlight on an engine?  A. Yes, sir.  Q. You saw it perhaps a quarter of a mile away?  A. I said a half mile. Q. You did see the headlight and Mr. Farquhar saw the headlight and you remarked to him about it or he did to you and you decided that it was the headlight of a Lake Erie engine.  A. Yes, sir.  Q. But you afterwards found out that that was incorrect?  A. We supposed it was; we did not know.  Q. Well, there was no engine there? A. Well, we did not know what it was; I do not know yet. Q. You didn't see any Lake Erie train?  A. I presume it was the street car but I did not know. . . .  Q. Where was it when you first saw the headlight?  A. After we had passed the house beyond the depot.  Q. That is not shown on the plan, the house?  A. No, sir.  Q. Then how far from the Lake Erie crossing were you when you first saw it? A. I suppose seventy-five to 100 feet.  Q. You think that you were seventy-five to 100 feet before you came to the Lake Erie crossing when you saw the headlight?  A. Might have been more than that.  Q. Then seventy-five to 100 feet on further you turned your automobile square about and headed in towards the street car line?  A. Yes, sir.  Q. At the time you first saw the headlight which you now conclude was the street car headlight, whatever it was you were off in your automobile to the side of the street car line; you were off here (indicating) and a moment or so later you turned right head on towards the street car line.  A. Yes, sir. Q. Then you and everybody else in the automobile would have a view of the side of the street car?—your automobile would be passing for a short distance the street car line as you crossed the crossing there?  A. Yes, sir.  Q. And your top on the automobile was thrown back?  A. Yes, sir. Q. Then after passing the street car line for the width of the Lake Erie tracks, that is, two main lines and a spur, you again turned your car at right angles and came up right straight to the street car track?  A. Sure.  Q. You were on a

straight line towards the street car track? A. Yes, sir. . . . Q. You saw the headlight seventy-five feet before you crossed the Lake Erie tracks and at that time you estimated it or estimate now that it was a half mile away from you. A. Yes, sir. Q. Then did you say that you saw it again just as the street car struck the automobile? A. I saw the small light; I did not know whether that is the same light or not; of course I don't. Q. But you did see it? A. I do not know whether it was or not. Q. You saw a light? A. I saw a light, yes, sir. Q. Did you notice whether that light had a reflector back of it?—was the light down about the middle of the street car? A. It was the reflector or light or whatever you call it. Q. You saw that again just as the street car struck the automobile? A. Yes, sir. Q. You say that you almost stopped when you started across the Lake Erie tracks? A. Before we started, we wanted to see where that light and determine what it was. Q. You went right on without further stopping until the accident. A. Yes, sir. Q. As you got to the edge of the street car line you didn't stop? A. No, sir. . . . Q. Now, Mr. Odbert, there was nothing there to obstruct that view? A. Nothing but telegraph poles. Q. That is just as you got to the track; just as your front wheels would strike the track you would have an unobstructed view of some 300 feet of track? A. Yes, sir."

We here call attention to the fact that the evidence is very strong and convincing that the car was well lighted and had a bright headlight showing at the time of the accident. This evidence is consistent with plaintiff's testimony and that of Mr. Farquhar who sat at the plaintiff's left in the automobile. The testimony of the two of them is convincing that they saw the headlight of the car before they crossed the Erie tracks and they saw it again while traversing the 170 feet between that crossing and the place of the accident. In addition to this there is a mass of convincing testimony that plaintiff and Farquhar saw the street car before they crossed the Erie tracks and they discussed as to whether or not they had time to make

the crossing where the accident occurred and concluded that they had "thousands" of time and made the effort with the disastrous results already noted.   At the trial they both said that they had stated at the coroner's inquest that they saw the car before they crossed the Erie tracks but that what they meant was that they saw the headlight of the car but did not see the car; this is an attempt to make a distinction where there is no practical difference.   If they saw the headlight of the approaching street car from the place where they say they did, how can it be said that they were not recklessly careless in trying to cross ahead of that car at a point a little more than 200 feet distant?   We think this attempt was gross negligence.

It is true that the plaintiff testified that he thought the light he saw was a half a mile away but it is evident that he was mistaken as to the distance because while he ran his automobile about 250 feet to the street car crossing, the car which carried the light had arrived at that point. The plaintiff further testifies that he again saw the light about 400 or 500 feet away from him, as he estimated it, and he again saw it a few moments before it struck his automobile.   Having seen the light before crossing the Erie tracks, how is it possible to permit a jury to say that the plaintiff was not guilty of gross negligence when it is remembered that he again saw the headlight between the two crossings and yet he attempted to cross in front of the car which he either did see or could have seen if he had looked.   But suppose for some reason that the headlight was not visible just before the trolley car reached the place of the accident, yet the plaintiff says he had seen the light twice before that and if he had stopped, looked and listened just before going upon the street car track, the accident would not have happened.   If the lights on the street car had all been extinguished after the plaintiff saw them when he was probably not 100 feet from the crossing, how can it be said that he was not negligent in attempting to make the crossing under such circumstances?   It seems to us that the inference is certain and

irresistible that the plaintiff saw the headlight of the car at two different times and places and that he knew the car was approaching and he must have been trying to cross the track in front of the car.

There is another circumstance disclosed by the evidence which tends strongly to convict the plaintiff of negligence. The uncontradicted evidence is that his automobile bore so much to the right at the crossing that the right hand wheels ran off the planks of the crossing and this circumstance testifies stronger than words that the plaintiff was conscious that the car was approaching and that it was near. In Tozer v. Altoona & Logan Valley Electric Ry. Co., 45 Pa. Superior Ct. 417, we held as stated in the syllabus: "While the rule to stop, look and listen, applicable to the crossing of steam roads applies only in part to the crossing of street railways, there is always the duty to look for an approaching car, and if the street is obstructed, to listen and in some situations to stop. It is vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving car, whether it be a steam locomotive or an electric car."

In McCartney v. Union Traction Co., 27 Pa. Superior Ct. 222, we held: "It is the law of Pennsylvania that in crossing the track of a trolley company, it is a duty to look, listen and if necessary, stop; and it is also settled that the looking must be done before entering upon the track or at the very edge of the track." In Tozer v. Railway Co., 45 Pa. Super. Ct. 417, we also held: "No error in a close calculation of a chance can relieve from the charge of contributory negligence. He must be held to have seen what was manifestly obvious:" citing a large number of authorities.

It is proved beyond controversy, inasmuch as it is corroborated by the plaintiff's own testimony, that the electric lights within the car were burning; that the same power which propelled the car supplied the electric light within and the headlight in front; and that the side

windows of the car were open.  It is a conceded fact that the inside lights threw light upon the objects along both sides of the track so that passengers within the car could see these objects, and there is no dispute that the car made considerable noise as the plaintiff claims that it was running twenty-five or thirty miles an hour; if this is so it must have been making sufficient noise so that if the plaintiff had stopped just as he reached the edge of the track, he must have heard the car approaching.  In the circumstances disclosed by the testimony we unhesitatingly say that it was the duty of the plaintiff to stop, look and listen when he reached that crossing because he claims that he did not see or hear the car when he attempted to cross the track.  But from his own testimony he had seen the headlights of this car but a few seconds before the accident at two different points.  Grant him the benefit of his contention that he did not know that it was the light on a car that he saw, still he was familiar with conditions there and he knew that a street car was due to pass that crossing at least every half hour and his own testimony shows that he had sufficient warning to put him on guard, and it is utterly impossible for us to say that he was not grossly careless in attempting to cross that track in the circumstances described by himself without stopping, looking and listening.  We think the facts of this case as disclosed by the plaintiff's own testimony and the other testimony not inconsistent therewith brings the case quite closely within the rule of Hess v. Williamsport and North Branch Railroad Co., 181 Pa. 492.  It is true that case referred to a steam railroad, but as we have already said, we think the peculiar facts of the present case required the plaintiff to stop, look and listen and therefore the doctrine of the Hess case applies with considerable force to the present case.

It will be observed that we are holding the plaintiff. guilty of contributory negligence on his own testimony but he is not in a position to complain of that.  In Adams v. Lehigh Valley Transit Co., 45 Pa. Superior Ct. 623,

the majority opinion of this court held: "If the plaintiff's own testimony had shown that he was negligent, he could not complain if the court took his case as he made it although another witness had done better for him than he had for himself; but, where his own testimony made out a clear case, the contradictory testimony of another witness would not destroy it as a matter of law, even if such witness had been called by himself. Possibly the jury might believe plaintiff's account rather than of his witness, and he was entitled to have them do so if they would: Buck v. McKeesport, 227 Pa. 10."

The learned counsel for plaintiff seem to attach some importance to the allegation that the street car was running twenty-five or thirty miles an hour. If it was running at that speed and the car was properly lighted with a headlight in good condition we are not prepared to say that speed would be unlawful.

In Thane v. Scranton Traction Company, 191 Pa. 249, the right of a passenger railway to run its cars rapidly is recognized. In that case Mr. Justice MITCHELL, speaking for the Supreme Court, said: "Rapidity of transit is no longer a mere convenience to the traveler; it has become a matter of vital interest to the general business of the community." In Yingst v. Lebanon & Annville St. Ry. Co., 167 Pa. 438, it was said: "Electric cars have a lawful right to go 'fast,' to go with 'speed.' "

Upon the question that a person cannot relieve himself of the charge of contributory negligence by proving the unlawful speed of the car, where the car was within his view just before he reached the track if he looked, and upon other questions bearing upon the present case, we refer to McCracken v. Consolidated Traction Co., 201 Pa. 378.

The argument of the learned counsel for the appellee and the authorities cited by them have received careful consideration, but on the plaintiff's own testimony, and much other testimony in harmony with it, we cannot escape from the conclusion that this unfortunate and

serious accident was the result of the plaintiff's own negligence, and, we think, the learned court below erred in submitting the case to the jury.

The assignments of error are sustained and the judgment is reversed and judgment is here entered for the defendant non obstante veredicto.