Lits *v.* Philadelphia R. T. Co., Appellant.

Argued October 21, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Philip Wallis,* and with him *J. J. K. Caskie,* appellant.

*Thomas I. Guerin,* for appellee.

OPINION BY GAWTHROP, J., December 12, 1929:
This is an action in trespass for damages for per-

sonal injuries resulting to plaintiff from a collision between an automobile in which he was riding and one of defendant's trolley cars. Defendant does not seek a new trial, its sole complaint being that its motion for judgment n. o. v. was refused. Therefore, we accept as established by the verdict every fact supported by the testimony presented by the plaintiff and every fair inference therefrom favorable to him in making the following statement of facts:

Plaintiff was a guest occupying the righthand side of the front seat of an eight cyclinder Jordan sedan automobile driven by his friend, Marchesani. One Milone was seated between them. The accident happened at the intersection of the Roosevelt Boulevard and Rising Sun Avenue, Philadelphia, at about daybreak on the morning of August 22, 1926. Roosevelt Boulevard runs in a generally east and west direction. It is three hundred feet wide from houseline to houseline and is divided into three driveways. On each side there is a thirty foot sidewalk. Next to the southern sidewalk is a thirty-four foot driveway for east bound traffic. There is a similar driveway on the west side for west bound traffic. The middle driveway for two way traffic is sixty feet wide. On each side of the center driveway is a fifty-six foot grass plot. Rising Sun Avenue runs generally north and south with some inclination to the northeast and southwest. It is seventy feet wide from houseline to houseline, and has a thirteen foot sidewalk on each side. On it defendant operates a double line of trolley tracks. The distance between the two lines of tracks, the width of the "dummy," is four and one-half feet. The distance between the rails of the trolley track is five feet, two and one quarter inches. The space between the curbline and the outer rail of the track on each side is fourteen feet, six and three quarter inches. The trolley cars run northward on the easterly track and south-

ward on the westerly track. Marchesani was driving the automobile west on the right side of the center drive of the Boulevard approaching Rising Sun Avenue. The lights on the automobile and the street lights were lit. It was raining. As he approached the Avenue going at a speed of fifteen or twenty miles per hour, he heard the trolley car "applying brakes" when he was about fifty feet from the first track, and when he was thirty-five feet from the first track he saw a northbound trolley car which "looked as if it was standing still" on the east track at the corner south of the south drive of the Boulevard. The distance from his machine to the car at that time was one hundred and fifty feet. From that point he drove at a speed of five miles per hour until he reached the line of Rising Sun Avenue, when he looked north and south and saw no traffic except the trolley car. He was then fifteen feet from the first rail and the trolley car was "just about starting" and was "about one hundred feet away." In his own words he "looked to see if the trolley car was coming. I seen the trolley car was coming, but I had plenty of chances to go across." Q. "The last time that you looked for this trolley car how far was the front of your automobile from the nearest trolley rail A. I was about on top of the first—. Q. What? A. About on top of the first. Q. Were you actually upon the car track, or were you just approaching the car track? A. I was just approaching it. Q. At that time how far away was the trolley car? A. About one hundred feet. Q. Had it crossed the south, or northbound—the south or eastbound drive of the Boulevard? A. It was just about getting on it ...... Q. Was it actually across the driveway or any part of that south driveway when you looked? A. No. Q. Can you tell us whether or not—or can you give us any estimate as to the speed of the trolley car at this time, when you first saw it moving? A. It was going

slow. Q. You observed that? A. Yes. Q. What did you do? A. I started the car again and I was just about crossing the trolley track when I seen the trolley car coming. Q. ...... where was your automobile with respect to the trolley track? A. The automobile was on top of the first rail. Q. How far away then was the trolley from you? A. About seventy-five feet. Q. What happened? A. I seen the trolley car coming at a terrific speed. I tried to put on more gas, but before I crossed the tracks I heard the crash. That is all that I can tell." When he was asked on cross-examination whether the trolley car was not about seventy-five feet away when his automobile was a foot or two from the track, he answered "No," and said that it was one hundred feet away and was "not going fast—it was started." Q. "When your front wheels were a foot or two from the first rail of the north-bound track, were you going about five miles an hour then? A. Yes. Q. And you continued to go about five miles an hour until you were hit? A. Yes." He testified that the automobile was struck just back of the front door, about seven feet from the front end, when its front wheels were at the second rail. Plaintiff testified that when the automobile was about fifty feet from the first rail he saw the trolley car at a distance of one hundred and fifty or one hundred and sixty feet; and that the driver then started to go across the track and before the automobile reached the track it "started slow again" when the trolley car was about one hundred feet away. When asked how far the trolley car was from the automobile when the front wheels of the latter were one or two feet from the first rail, he said, "about seventy to seventy-five feet;" that it was "coming slow and it hit the machine like it was flying." The other passenger testified: Q. "Just before the trolley car hit you, how far was the trolley car from the automobile? A. About one hundred feet away. Q.

Was it (the automobile) on the tracks, or had you come to the tracks yet? A. No, it was on the tracks." He was unable to estimate the speed of the automobile or trolley car.

The negligence which plaintiff attempted to prove was the excessive speed of the trolley car, the failure to control it properly and the failure of the motorman to give a warning of its approach.

It is well settled that the purpose of the signal is to warn persons approaching a crossing, but, when a person sees a car coming, he needs no other warning or notice: Schuchalter v. P. R. T. Co., 288 Pa. 189. As the car was both seen and heard by plaintiff at a distance of one hundred and fifty feet, the question of the negligence of the motorman in failing to give a signal of the approach of the car is not involved.

As to the speed of the trolley car, we think plaintiff's proof wholly failed. The driver of the automobile testified positively that the car had not crossed any part of the eastbound driveway of Roosevelt Boulevard when he "was about on top of the first rail" ......or "just approaching it." He also testified that the trolley car was about one hundred feet from him at this time. Of course the latter statement was only an estimate. But the first statement fixed the distance of the trolley car from the point of collision. It is an undisputed fact that if the automobile was then on the northern side of the middle drive of the Boulevard, as testified by its three occupants, the trolley car was at least one hundred and twenty feet from it; and was moving slowly. From that moment until the automobile was struck, it would go less than ten feet before it was struck if it was moving at five miles per hour. In order that the collision could take place in such circumstances, it would have been necessary for the trolley car to move twelve times as fast as the automobile moved to cover the one hundred and twenty feet in

the same time. Manifestly, such a proposition is absurd. If the fact is that the automobile was on top of the first rail when the trolley car was but seventy-five feet away, the collision could not have occurred unless the car was moving ten times as fast as the automobile moved, or at fifty miles per hour, because the automobile would have moved but six or seven feet while the car moved seventy-five feet. The conclusion is irresistible that plaintiff and his witnesses were mistaken as to the distance between the automobile and the trolley car when the former started across the track, and the jury should not have been allowed to believe their story. In the language of Mr. Justice Brown in Bornschuer v. Tr. Co., 198 Pa. 332, 334, "such testimony is either intentionally false or mistakenly so; and, in either case the court should instruct the jury to disregard it." A court cannot accept as true that which the indisputable evidence demonstrates is false: Lessig v. Reading Transit & Light Co., 270 Pa. 299. Manifestly the driver of the automobile was either mistaken as to the distance between him and the car, or took the risk of crossing in front of the car when it was foolhardy to do so. Although the driver's negligence is not to be imputed to the plaintiff, the latter was not relieved from all responsibility. He was bound to exercise reasonable care and could not sit quietly by when danger was plainly imminent, without taking means to escape it. He testified that he observed the trolley car from the time when he was fifty feet from the track and saw it when it was one hundred and fifty feet away. He was seated on the front seat with full opportunity to warn the driver, but did and said nothing. The circumstances of the case did not relieve him from the charge of contributory negligence in joining the driver in testing an obvious danger. In this regard plaintiff is within the rule stated in Griffiths v. Lehigh Valley Traction

Co., 292 Pa. 489, and Kirschbaum v. P. R. T. Co., 73 Pa. Superior Ct. 536. As the testimony of plaintiff and his witnesses as to the position of the car when the automobile reached the track cannot be accepted, we deem it proper to refer to the testimony of a disinterested witness called by defendant, who gave an intelligent description of what he saw, which leaves no doubt as to what the court below should have done, though we predicate nothing on this. This witness testified that he saw the automobile one hundred feet or more east of the first track when the trolley car was entering on the center drive of the Boulevard, and that the automobile struck the trolley on the front bumper and swerved around against the side of the trolley car, which did not run more than five feet after the collision, and that when he got out of the trolley car no part of the automobile was on the car tracks, but that it was "up against the side of the trolley car tight—they had to back the trolley car back to get it loose." The testimony of the motorman and conductor and another disinterested witness was to the same effect.

The judgment is reversed and here entered for defendant non obstante veredicto.