## Dopler, Appellant, v. Pittsburgh Railways Co. et al.

114

Argued October 2, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Robert H. Braun, Jr.,* with him *Thomas M. Marshall,* of *Marshall & Marshall,* for appellant.—The case was for the jury: Weschler v. Traction Co., 293 Pa. 472; Galliano v. Electric Co., 303 Pa. 498.

*D. H. McConnell,* with him *J. R. McNary,* for appellee.—The case was properly for the court: McCloskey v. Ice Co., 174 Pa. 34; Lessig v. Transit & Light Co., 270 Pa. 299.

OPINION BY MR. JUSTICE KEPHART, January 5, 1932:
Appellant's wife, while riding as a guest in an automobile, was injured at a street intersection when a street

car collided with the automobile. This action was instituted against appellee and Zorn & Limbacher, a partnership. The jury returned a verdict for the latter, but found for the plaintiff against appellee in the sum of $5,000. The court below entered judgment n. o. v. because there was no evidence of negligence on the part of appellee.

The statement charged negligence of the motorman in operating his car at a high, dangerous, and unsafe rate of speed, and approaching a street intersection with the street car not under proper control. To sustain these allegations of negligence, it is necessary that some evidence be introduced; the mere fact that an accident happened does not prove it. To sustain the charge, appellant showed that there was a car stop sign at which passengers may alight, suspended at the intersection of the street where the collision occurred, and argues that the driver of the automobile had a right to assume that the motorman would stop the street car or reduce its speed at this place, and that his failure to do so was negligence. Failure of a motorman to stop at such signs, even at a crossing where there is an ordinance requiring it, is not substantive proof of negligence: Kilgallen v. P. R. T. Co., 300 Pa. 451. Whether the stop is made or not does not bear on the question of negligent operation. A car operated with due care under the circumstances may safely pass these signs, and not be guilty of a negligent act. The car stop sign or ordinance requiring it may become important on the question of the contributory negligence of one attempting to cross the street, but even then he must look to see whether the car does stop or reduce its speed: Kilpatrick v. P. R. T., 290 Pa. 288, 292.

There is no evidence that when the car struck him it was doing any negligent act. Without this, the presumption would be that the street car was being operated in a careful, prudent manner. Appellant argues that there was evidence to show reckless operation. One

of the witnesses stated it was going at the regular speed in that district. The driver of the automobile said it was "pretty fast," but "pretty fast" may be the regular speed, and it may be either fast or slow according to the circumstances. Under some conditions, five miles an hour would be "pretty fast." The words are relative, and negligent speed is required to be shown in a more definite manner. Such testimony is not sufficient proof of reckless or careless operation to sustain a charge of negligence. In Wolf v. P. R. T., 252 Pa. 448, the testimony was that the car was going "ordinary fast" and "extra fast" and this was held insufficient evidence as to speed, and in Yingst v. Leb. & An. Ry. Co., 167 Pa. 438, it appeared that the car "came at full speed," "they were running pretty fast," "they came swiftly past us." This too was held insufficient to establish negligence in the absence of evidence of actual speed. We stated in Moss v. P. R. T., 180 Pa. 389, that, "No inference of negligence can be drawn from the indefinite statements of the witnesses as to the speed of the car which is not repelled by the fact that the movements of the car were under such complete control that it stopped at once."

Appellant strongly relies on the following syllabus from Galliano v. Penn Elec. Co., 303 Pa. 498: "Where an automobile is committed to a crossing before a street car started across it at right angles, the motorman's duty under the circumstances is to reduce the speed of his car sufficiently to enable the automobile to pass in front of him in safety. If the autoist gets into the intersection first he is justified in assuming that his right of way is superior to the street car, and that as his auto was at the crossing before the street car had reached it, it was negligence on the part of the street car company to attempt to cross when he was entering the intersection." This statement was not intended as a general rule, applicable to all cases; if it was, it would be opposed to all our decisions on the question, for it totally disregards the basic principle as to negligence which is

that one is under a duty to use due care under the circumstances, and failure in this duty constitutes negligence. The facts of Galliano v. Penn Elec. Co., supra, do not support the rule. They show a street car standing at an intersection at a busy downtown corner. The automobile damaged in the accident was approaching on the intersecting street having a signal light in its favor, which gave it the right of way. When it had entered the intersection, and was committed to the act of crossing, the signal light was changed and the street car, notwithstanding the position of the automobile, proceeded immediately to cross the street, causing the accident. It was under these circumstances that the rule above stated was announced.

The general statement in the syllabus of the Galliano Case is clearly applicable as between two automobiles at an intersection, or a truck and an automobile or similar vehicle, or between any two kinds of vehicles at crossings where the red and green signal lights control traffic, and one of the vehicles has committed itself to the crossing at a time when the signal light was in its favor. We have stated it many times as follows: "It is the duty of the driver of an automobile in approaching a street crossing to have his car under control and observe if vehicles are approaching on the intersecting street, and, in case a car or truck is first at the crossing, that vehicle must be given an opportunity to cross the intersecting street": Simon v. Lit Bros., Inc., 264 Pa. 121, 123; McClung v. Penna. Taximeter Cab Co., 252 Pa. 478; Davis et ux. v. American Ice Co., 285 Pa. 177.

The general rule as to street cars and automobiles at intersecting streets does not contemplate a race between them to see which "gets into the intersection first" so that the first arrival can assume that "his right of way was superior," and on it base a claim for damages for any accident that may happen. The general rule has been stated in all our cases to be that the driver of an automobile must look on the intersecting street to see

if a street car is approaching the crossing, and, if it is, he must, before crossing, judge as best he can the distance of the car from the intersection. If an ordinarily prudent person feels his vehicle may cross in safety, he is not required to wait on the street car: Kilpatrick v. P. R. T., supra; Flounders v. South Penn Traction Co., 280 Pa. 85. This rule was the outgrowth of another principle as announced by this court: "The dominant right to the use of the tracks of a street railway company on a public highway is in the company; and that right must be conceded and deferred to by all the public who have the right to cross the tracks. When about to cross, they must use ordinary prudence to ascertain whether the owner of the tracks is about to use them": Gavin v. P. R. T., 271 Pa. 73; McCracken v. Consolidated Traction Co., 201 Pa. 378; Winter v. Mahoning & Shenango Railway & Light Co., 61 Pa. Superior Ct. 441; the latter case being approved in Griffith v. P. R. T.; 267 Pa. 85, and Gehringer v. Erie Rys. Co., 301 Pa. 103, 106.

While this principle was announced in connection with the contributory negligence of one wishing to cross the tracks of a street railway, it none the less expresses the right which is in the owners of the railway company, and imposes on those wishing to cross the streets a corresponding duty relative to that right. If this right, which is in the owner of the tracks, is limited by the rule claimed to have been announced in the Galliano Case (that is, the one which is at the crossing first always has a superior right) then the rule above quoted with regard to the dominant right of the owner of the tracks, and the rule requiring the driver of an automobile to look on the intersecting street to see if a street car is approaching, would have no place in our law. We would then hold that as long as a street car is not at the crossing, a vehicle which arrives at an intersection first might with safety, so far as a claim for damages is concerned, cross it without being guilty of any breach of

duty on which any negligent act could be predicated. Whether the street car was 25, 50, or 100 feet away would be immaterial. The automobile, being at the crossing first, would have the right to go over; and similarly a pedestrian would be in the same position.

In going over our cases of trolley car accidents at street intersections, we find many have been decided solely on the proposition that because the street car was too close to the crossing for a prudent person to attempt to cross the tracks, a recovery could not be had. If the rule so claimed in the Galliano Case is the law, then we have been mistaken in all these cases, but, as we have stated, that rule was not intended to cover such cases as are here referred to.

We said in Weschler v. Buffalo, etc., Traction Co., 293 Pa. 472, that "trolleys are not held to the strict rule of control that attaches to a moving auto at a public crossing," and the reason for it is obvious. The traffic in street cars ordinarily is much greater than in a single automobile or in a number of automobiles and this traffic must move. It is important that it should move freely and rapidly in cities. It should not be subjected to a rule that would retard these movements, and as it operates on a single car track, without the ability to turn to the left or right as the driver wishes, as in the case of an automobile, but has only the choice of going backwards or forwards, it should not be subjected to the rigid requirement of the rule as to automobiles. It is a heavy vehicle normally, ten to twenty times heavier than an automobile. It was stated in Thane v. Scranton Traction Co., 191 Pa. 249, that the right of a passenger railway to run its car rapidly is recognized. Mr. Justice MITCHELL, speaking for the court, says, "Rapidity of travel is no longer a mere convenience to the traveler; it has become a matter of vital interest to the general business of the community." In Yingst v. Leb. & An. St. Ry. Co., supra, it was said: "Electric cars have a

lawful right to go fast, with speed." See Odbert v. St. Ry. Co., 50 Pa. Superior Ct. 525, 533.

It must not be understood, however, that there is no duty on the motorman of the street car. He is required to exercise proper care in approaching a crossing, depending on the condition of the traffic: Knobeloch v. Pittsburgh, Harmony, Butler & New Castle Ry. Co., 266 Pa. 140, 141, 144; Kuhns, to use, v. Conestoga Traction Co., 290 Pa. 303, 308; Shields v. P. R. T., 261 Pa. 422, 426. If there is an object in the path of the street car a sufficient distance ahead for the car to stop, the motorman must not deliberately run the object down, but should govern the speed of the car so as to avoid an accident: Weschler v. Buf., etc., Trac. Co., supra. In the case of Shaeffer v. Reading Transit Co., 302 Pa. 220, a definite act of defendant's negligence was established. In that case it appeared that a truck was on the track a sufficient length of time and a sufficient distance away from the street car for the latter to have stopped, had the car been operated in a careful, prudent manner, but as it was operated at a reckless speed, the accident occurred.

In the case before us, we have no evidence of careless operation, but, on the contrary, we have evidence of the car being operated in a careful manner, when the automobile appeared in front of it and was struck. If both parties were careful, it amounted to nothing more than an accident. It appears that the car was traveling in a careful, prudent manner, and while it was so traveling, the driver proceeded to cross in front of it. By so doing, the autoist entirely disregarded the right of the owner of the street car. As stated above, a motorman is under no duty to stop at the ordinary car stop signs, as distinguished from our traffic control signs at street intersections, nor at a crossing where there is an ordinance requiring it, so that his failure to stop would not be an act of negligence. See Kilgallen v. P. R. T. Co., 300 Pa. 451; Kilpatrick v. P. R. T., supra; Flynn v. Pittsburgh

Rys. Co., 234 Pa. 335. A car may safely pass these passenger stop signs under proper control and be within its lawful right. The street cars have the right of way over pedestrians and vehicular traffic, and it is the duty of the latter to give to the former an unobstructed passage of its cars: Ehrisman v. East Harrisburg City Passenger Ry. Co., 150 Pa. 180. As was stated in Steinberg v. P. R. T. Co., 87 Pa. Superior Ct. 321, "There was nothing to justify the plaintiff's assumption that the car would stop." As was said in Long v. P. R. T., 65 Pa. Superior Ct. 281, 284, "The proximate cause of the collision was the wholly unwarranted conclusion of the plaintiff's driver that the motorman would stop his car. Regarding the situation from the point of view of the motorman, his car had the superior right of way......; he saw the truck approach so as to invite the idea that it was the intention of its driver to stop and permit the street car to pass." This is a situation similar to ours. Attention is called to Gilmartin v. Lackawanna Valley Rapid Transit Co., 186 Pa. 193.

The judgment of the court below is affirmed at appellant's cost.