## Bahan v. Pittsburgh Railways Company, Appellant.
## Bahan, Appellant, v. Pittsburgh Railways Company.

570

Argued April 12, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*William A. Challener,* with him *J. R. McNary,* for appellant, No. 133, appellee, No. 188.

*W. J. Connelly,* for appellant, No. 188, appellee in No. 133.

Opinion by Keller, P. J., July 18, 1935:

We have here two appeals from the judgment of the court below. The defendant has appealed from the discharge of its rule for judgment non obstante veredicto; the plaintiff from the discharge of his rule for a new trial, because of the inadequacy of the verdict. We are

satisfied that judgment should be entered for the defendant non obstante veredicto because of the contributory negligence of plaintiff's chauffeur. It follows, automatically, that the plaintiff's appeal must be dismissed.

The plaintiff was injured in a collision between his automobile, driven by his chauffeur, and defendant's street car at a point in the intersection of Smithfield and Water Streets, two much traveled streets in the City of Pittsburgh. The accident occurred on September 10, 1931 at about 11:30 o'clock P. M. The plaintiff, at the time, was riding in the front seat with his chauffeur. He did not see the street car before it struck the automobile, for the reason, he said, that he was looking in another direction. He is responsible, however, for the negligence of his employee.

Traffic conditions at the intersection of Smithfield and Water Streets are somewhat complicated and, in the absence of a map or plan, need rather detailed explanation.

Smithfield Street, one of the main business streets of Pittsburgh, runs in the general direction of north and south. At its intersection with Water Street it is 35 feet 5 inches wide between curbs, with a 12 foot sidewalk on either side, and two street car tracks in the cartway, the west track southbound, the east, northbound. These tracks veer to the east as the street approaches Water Street, in order to carry them over the east side of Smithfield Street bridge. Smithfield Street crosses Water Street and discharges into the Smithfield Street bridge across the Monongahela River. It widens at the approaches so that just at the entrance of the bridge it is 44 feet 6 inches wide, with sidewalks 10 feet 6 inches wide on each side. The west half of the bridge is devoted to vehicular traffic; the east half, separated by a curb, to the two street car tracks aforesaid.

Water Street is likewise a much traveled street.

West of Smithfield Street it is a one-way street, with traffic moving east. There, it is 50 feet 5 inches wide in the roadway, with a sidewalk 11 feet 7 inches wide on the north, and no sidewalk, but a retaining wall, on the south. There is one street car track west of Smithfield Street almost in the center of the street, on which cars move east, connecting, by a broad curve, with the southbound car track on Smithfield Street, but not crossing that streeet. There is a safety zone for passengers entering or leaving these cars on the south side of the track, the end nearest Smithfield Street being about 60 feet distant from the southbound car track on Smithfield Street. Water Street, east of Smithfield Street is a two-way street, 33 feet 9 inches wide, with two street car tracks, neither of which crosses Smithfield Street. Both of them connect by broad curves with the street car tracks on Smithfield Street. The north, or westbound, track connects with the southbound track on Smithfield Street a little north of the point where the track from Water Street west of Smithfield Street joins the Smithfield Street southbound track. The south or eastbound track on Water Street east of Smithfield connects with the northbound Smithfield Street track about 35 to 40 feet south of the connection of the other tracks. There is a safety 'island' for pedestrians in the space east of the switches connecting these street car tracks. The point of collision was north of this safety island and almost in a line with the east house line of Smithfield Street extended. There is a traffic signal light at this island, one on *each side of* Smithfield Street at the Water Street house line, one on the north side of Water Street at the Smithfield Street house line, and one on the west side of Smithfield Street near the approach to the bridge, and nearly opposite the 'island.'

For convenience, we shall call Water Street, west of Smithfield Street, where it is a one-way street, West

Water Street, and east of Smithfield Street, where it is a two-way street, East Water Street.

Traffic on the south side of West Water Street— (one-way street)—approaching Smithfield Street, turns southwardly onto the bridge. Traffic on the north side of West Water Street,—(one-way street)—approaching Smithfield Street must cross Smithfield Street on a diagonal line so as to get on the south side or eastbound lane of East Water Street,—(two-way street).

Plaintiff's driver was traveling east on the north side of West Water Street. As he approached Smithfield Street there were three or four automobiles ahead of him, the nearest being about 15 feet ahead. When the front of his car got even with the east end of the safety zone he saw defendant's westbound car approaching on East Water Street, 150 feet away from him. This driver was well acquainted with traffic conditions at this point. He knew that this street car would be compelled to curve into Smithfield Street, connecting with the southbound track on that street, and thereafter proceed south across Smithfield Street bridge. It could not go farther west than Smithfield Street for there was no track across that street. When asked how far he was from Smithfield Street when he first saw defendant's west bound street car he said '15 feet or more.' He must have referred to the west house line of Smithfield Street, for the plan in evidence shows it is about 25 feet from the east end of the safety zone to the extended west house line of Smithfield Street. He was asked on cross-examination where the street car was when he came to the end of the Monongahela House— the west house line of Smithfield Street—and he said 130 feet. The appellee argues as if the driver had said the car was 150 feet east of Smithfield Street, when he first saw it. He did not say so. He said it was 150 feet distant from *him.* As he had at least 15 feet to go before reaching the west house line, and Smithfield

Street is 59 feet 5 inches between house lines, it was about 75 feet from where plaintiff's driver was to the east house line of Smithfield Street, and the street car was about 75 feet east of this house line when he first saw it. The track on which the car was traveling began to curve toward the south about 35 feet east of the east house line, so that when plaintiff's driver first saw the car it was about 40 feet east of the point of curve and, when he got to the west house line of Smithfield Street, the street car was about 20 feet east of the point of curve.

From where plantiff's driver first saw the street car to the first track of the curved west and south bound track, at about the point of collision, was 75 feet, so that he and the street car had to travel about the same distance to the point of collision—the street car slightly more because of the curve. The signal for traffic on Water Street on both sides of Smithfield Street was green,—that is, the signals were the same for east and west bound traffic—if it was green for plaintiff's driver it was also green for the trolley motorman. The lights in Pittsburgh change from green to green and amber, then to amber, then red. It is permissible to 'go' while the signal shows either green or green and amber. One matter the appellee overlooks and that is that after the street car makes the turn it can proceed south on Smithfield Street even though the red light shows on Water Street, for it is then headed south and the traffic light for Smithfield Street is green when it is red for Water Street.

Plaintiff's driver made a number of conflicting statements as to how far away the trolley was as he approached the first rail of this curved west and south bound track. When first questioned he said that when the front of his automobile got to the curved track which the street car would have to use, the latter was half a car length away—which he explained as, 15 to

20 feet. Then, in response to the leading question of plaintiff's attorney, he said the street car was that distance away when he was going over the track; then he said that when he was 5 or 6 feet from the track the street car was 30 feet away; and then he admitted that on another trial he had testified that just as he was about to go over the first rail, the street car was within ten feet of him, which was corroborated by plaintiff's witness, Prosser. On page 35a he testified in response to a question on cross-examination by defendant's attorney, as follows:

Q. Now will you give me your reason why you went on to this street car track when this street car was within ten feet of you and you were five feet short of the first rail? Will you give me a reason for going on it?

A. Why, I was in the clear.

Q. Then why did you go into the path of the street car when you were in the clear?

A. The street car was far enough way from me to go by and let me pass.

Q. Ten feet away?

A. If I did say ten feet—I said more than ten feet, fifteen or more—I misjudged.

Q. When I asked you the other day what your reason was, I asked you in this way: 'Q. Before you got into any trouble, when you were five or six feet short of the track, why didn't you stop?' And didn't you answer. 'A. I was following the line of the other traffic. Q. Is that your reason, because you were following the line of traffic? A. I didn't see the street car making any turn, didn't warn me to stop.' That was your answer, wasn't it?

A. Yes, I wasn't warned to stop.

Q. And that was your reason for going on?

A. I was out of danger—

Q. Listen — ......

A. That is one reason.

Q. And the other one was that the street car man didn't warn you to stay off?

A. He was far enough away for me to get away.

Q. You answered my question by saying that the other reason was because the motorman didn't warn you to stay off?

A. No, he didn't warn me.

Q. Is that your reason?

A. I am going to tell you my reason. He was far enough away from me to get by. I was out of danger. The front part of the car was already over the last track."

The plaintiff's driver, throughout, seemed to have the idea that if he beat the street car to the rail, and *himself* got over the track he would be clear and out of danger, not realizing that when the front of his automobile was 5 feet away from the first rail he would have to travel at least 25 feet for the *automobile* to be clear of the approaching car. Thus he testified again:

"The Court:

Q. You are being asked now whether the second reason for going on was because the motorman failed to give you a warning. Now you can answer that question yes or no and then if you want to explain it—

A. I didn't get no warning.

Q. That isn't the question. The question is whether that was your reason for going on?

A. That was my reason. I wasn't warned.

Q. Now if you have any explanation you may state it.

A. The street car, as I got across the curved track, he was far enough away. That puts me in the clear, I am out of danger. I am sitting in the front part of the car. As far as I am concerned the front part of the car is out of danger. I passed over the first and then I was going to pass the second rail when he turned into me, and when he was telling me about those five

or six feet and he was ten feet away. I was confused."

The driver admitted that he saw the street car from the time it was 150 feet away from him, until it hit the rear of his automobile; that it was moving all the time, but not at an excessive speed—it stopped within 5 feet after the collision; that he knew that the street car must come around that curve; that the signals were green or green and amber and amber, until just *after* the car hit the automobile, when it turned from amber to red. Giving the plaintiff the benefit of every reasonable intendment in his driver's testimony, it is clear that, notwithstanding the latter saw the car bearing down upon him around the curve, and he was far enough away that he could have stopped, he deliberately drove the automobile onto the track when the car was so close that he must have known that the automobile could not clear the track if the car continued to come on. Irrespective of the motorman's negligence, in doing so, he was guilty of contributory negligence as matter of law: Leiser v. Phila. R. T. Co., 90 Pa. Superior Ct. 232; Lits v. Phila. R. T. Co., 97 Pa. Superior Ct. 344; Widson v. Phila. R. T. Co., 113 Pa. Superior Ct. 168, 172 A. 164; Dopler v. Pittsburgh Rys. Co., 307 Pa. 113, 160 A. 592.

This is not the case of a collision between an automobile and a street car, approaching each other at right angles, at the usual square street intersection. It was an irregular shaped intersection. The traffic was complicated by a number of matters, including one way traffic on part of Water Street and two way traffic on the other part, and a curved track on which the street car was moving into Smithfield Street, whence it would proceed across plaintiff's line of travel. While, under the testimony of plaintiff's witnesses the motorman could be found guilty of negligence in running into the plaintiff's automobile while it was crossing the track, we think the conclusion cannot be escaped that plaintiff's driver was also negligent in entering upon the

track when the street car was so close that the automobile could not clear the track unless the motorman stopped his car.

No. 133 April Term 1935. The judgment is reversed and is now entered for the defendant non obstante veredicto.

No. 188 April Term 1935. The appeal is dismissed.