## McCraley et vir *v.* George et al., Trustees, Appellants.

Argued April 13, 1944.   Before KELLER, P. J., BALD-
RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Daniel H. McConnell,* with him *J. R. McNary,* for appellants.

*George A. Dawson,* for appellees.

OPINION BY BALDRIGE, J., July 15, 1944:

The sole question before us in this trespass case is whether the wife plaintiff, hereinafter called the plaintiff, the driver of an automobile hit by a trolley car, was guilty of contributory negligence as a matter of law.

Plaintiff was driving northwest on Water Street, Pittsburgh about 5:30 P. M., May 31, 1941. When she reached a point near the foot of the ramp coming off the Point Bridge she was confronted by a red traffic light and stopped. The defendant's trolley car was then moving southeastwardly, down the ramp near where the trolley tracks turn east at an obtuse angle to enter Penn Avenue, which runs east and west and has its western terminus at the foot of the ramp. If Water Street continued in the same general direction it follows before reaching the ramp it would cross the bridge, but it turns slightly to the right and remains on the right side of the river. The plaintiff intended to go over the Point Bridge, which required her to cross the trolley tracks at, or near, the foot of the ramp. When she stopped for the traffic signal her car was about 12 feet from the first rail of the curving tracks just before they straighten out to enter onto Penn Avenue. It was then that she first saw defendant's car, which she knew was not controlled by any lights or signals, "...... coming down the ramp ...... 20 or 25 feet back ...... from the curve ...... 30 or 40 feet off" traveling at a speed of 15 to 20 miles per hour. About that time the light for the outbound traffic crossing the bridge turned green and she started upgrade at a speed of 8 to 10 miles per hour. When she reached the first rail defendant's car was about 20 feet distant and its speed was increasing. The plaintiff at that moment swung her automobile toward the right, but was unable to avoid the oncoming trolley car, which struck her automobile about the middle of the left hand side.

Suit was brought to recover damages for injuries sustained and verdicts were obtained by the husband and wife upon which judgments were entered. Hence these appeals.

There is no controversy concerning the sufficiency of the evidence to establish defendant's negligence. The

appellants claim plaintiff was guilty of contributory negligence. That raises the question whether, in the exercise of due care, the plaintiff should have waited to see whether the approaching trolley car would stop before attempting to cross defendant's tracks.

We concede that one who is about to cross a street car track at an intersection is not required to wait on an approaching car if there are reasonable grounds to believe that the crossing can be made safely. There are a number of factors, including the speed and distance of the approaching car, the presence or absence of signals, traffic conditions, etc., that must be taken into consideration in determining whether one uses due care the circumstances require. While there are certain fundamental legal principles to guide us, each case is to a large extent controlled by its own facts. In *Dopler v. Pittsburgh Railways Company*, 307 Pa. 113, 160 A. 592, the court gave warning that drivers of automobiles should not attempt to enter into a race with an approaching street car to see which gets to the intersection first and thus attempt to obtain a superior right of way. It quotes with approval from *Gavin v. P. R. T. Co.*, 271 Pa. 73, 113 A. 832, the following principle, p. 119: "The dominant right to the use of the tracks of a street railway company on a public highway is in the company; and that right must be conceded and deferred to by all the public who have the right to cross the tracks. When about to cross, they must use ordinary prudence to ascertain whether the owner of the tracks is about to use them."

Here, as above stated, the plaintiff was aware that the car was not controlled by any traffic lights or signals and that the speed of the trolley car approaching downgrade 30 or 40 feet away at the rate of 15 or 20 miles per hour was not being reduced, nor was there any other indication that the motorman intended to stop. To the contrary the trolley car's speed was increased

as plaintiff was about to go onto the tracks. The green light did not warrant plaintiff's proceeding across the trolley tracks in front of this oncoming car.

The learned court below and the appellee rely principally upon *Brungo v. Pittsburgh Railway Company*, 132 Pa. Superior Ct. 414, 200 A. 893. *Shearer v. Pittsburgh Rwy. Co.*, 145 Pa. Superior Ct. 560, 21 A. 2d 482; and *Swilley v. Philadelphia Transp. Co.*, 153 Pa. Superior Ct. 467, 34 A. 2d 270.

In the *Brungo* case the plaintiff was driving his car on Grant Street as it approached the intersection with Liberty Avenue in Pittsburgh. When the light showed green the plaintiff was about 15 or 20 feet from the tracks and he saw a car 5 or 6 feet ahead of him proceed safely across the tracks, and when his car reached the first rail the defendant's trolley car was about 13½ feet away. We held that as he had the green light and the approaching trolley car had the red light and was "slowing down", he had a right to assume that the motorman would obey the traffic signal and stop.

In the *Shearer* case there was a collision in Wilkinsburg at the intersection of Coal Street and Walnut Street. When plaintiff was near the first rail of the trolley track he saw a car 75 or 80 feet away, *moving slowly* and when he was on the tracks he saw the car coming 20 feet away. He then endeavored to increase the speed of his automobile but the trolley car "shot forward", his engine choked and his automobile was struck on the rear wheel by the street car.

In the *Swilley* case the collision occurred at the intersection of 15th and Chestnut Streets, two busy streets in the center of Philadelphia. When the plaintiff approached the intersection the traffic lights turned green and the trolley car was then about 100 feet north on 15th Street. He proceeded to cross the intersection with the traffic lights still green. When he was about 5 feet from the west rail and the trolley car was some

26 feet from him and appeared to be stopping, he continued across the track and as he did so the trolley car suddenly crashed into the middle of the left side of his automobile. We called attention to the fact there that while a driver cannot dispense with due care and rely solely on the guidance of an officer or traffic light, the plaintiff did not do so in that case, but relied also upon the fact that the trolley car was moving slowly. In those cases the facts are not analogous to those before us and they are not controlling.

Viewing the testimony in the most favorable light for plaintiff, we are all of one mind that this unfortunate accident would not have occurred if she had not failed to exercise the care the situation required.

Judgments are reversed.