## Mantia, Appellant, v. Pearlman.

*Negligence—Automobiles—Trolley cars—Collision—Street crossing —Case for jury.*

In an action for damages for personal injuries the case is for the jury and a verdict for the plaintiff will be sustained where the evidence on the part of the plaintiff was that she was struck by the defendant's automobile truck, which was moving rapidly and in disregard of a traffic semaphore which was set against it.

When the plaintiff, before crossing at a point where traffic converged from six directions, looked to the left, from which direction vehicles would first come, and saw none approaching her, observed that the semaphore was set against traffic in that direction, she was justified in starting across and directing her attention chiefly to the traffic that was likely to move from other streets.

Under such circumstances she cannot be held to be contributorily negligent, as matter of law, because she did not notice a truck driven at a rapid rate of speed past the signal which she knew was set against traffic in that quarter.

Argued April 26, 1927.  Appeals Nos. 86 and 87, April T., 1927, by plaintiffs from judgment of C. P. Allegheny County, October T., 1924, No. 2067, in the cases of Rose Mantia, a minor, and Potter Title and Trust Company, Administrator of the Estate of Jack Mantia, deceased, v. Philip Pearlman, doing business

as the Standard Refrigerator Company.  Before HEN-
DERSON, TREXLER, KELLER, LINN, GAWTHROP and CUN-
NINGHAM, JJ.  Reversed.

Trespass to recover damages for personal injuries.
Before SHAFER, P. J.

The facts are stated in the opinion of the Superior
Court.

Verdict for plaintiff Rose Mantia in the sum of $1,-
500, and in favor of Potter Title and Trust Company,
administrator, in the sum of $250.  Subsequently the
court, on motion, entered judgment in favor of defend-
ant non obstante veredicto.  Plaintiffs appealed.

*Error assigned* was the judgment of the Court.

*George Y. Meyer,* and with him *A. C. Teplitz,* for
appellants.

*William A. Jordan,* for appellee.

OPINION BY KELLER, J., October 7, 1927:
Rose Mantia, twenty years old, was run over by one
of defendant's trucks while she was walking across
Grant Street, Pittsburgh, at the regular crossing
place to the Union railroad station, and was badly
injured.  An action was brought by her and her
father, Jack Mantia, to recover the damages sus-
tained by them, respectively, and verdicts were ren-
dered in their favor.  The court below subsequently
entered judgments in favor of the defendant, notwith-
standing the verdicts, on the ground of her contribu-
tory negligence, and these appeals followed.

The lower court held, in effect, that Miss Mantia,—
hereinafter referred to as the plaintiff—, was con-
cluded by the evidence of her witness, McCormack,
the police officer, who testified that while off duty he

saw defendant's truck driven past the semaphore signal set against it, and that plaintiff started to walk across Grant Street when the truck was "about half way" "from the semaphore to the place where the girl was crossing." But the plaintiff and her companion, Miss McCullough, both testified that they had looked to their left, from which direction vehicles would first come, just before stepping down from the sidewalk into the street, saw the semaphore set against traffic from Liberty Avenue into Grant Street, and that no truck had then passed it; and their testimony is not to be diregarded unless the physical facts in the case are so clear as to render it wholly unbelievable. We think it was supported by other testimony of McCormack himself and should not have been regarded as impossible of belief. McCormack testified that the truck at the time of the accident was traveling "at a pretty good rate of speed," "from fifteen to twenty-five miles an hour, maybe twenty-five miles." It is well known that a pedestrian on a much frequented street does not ordinarily walk faster than three miles an hour—that is a good gait on city streets. The place where the accident occurred was one of the busiest in the City of Pittsburgh. It was raining hard and the plaintiff was carrying her umbrella raised. It is not probable that she was walking faster than three miles an hour. She was hit by the truck when she had taken about five steps from the curb and was in the middle of the nearest street car track, about twelve feet from the curb. If the truck was traveling twenty-four miles an hour while the plaintiff was walking three miles an hour, then while she traveled twelve feet it had covered ninety-six feet and was about forty feet on the other side of the semaphore (which was about fifty to fifty-eight feet away) when she started across. If it was traveling fifteen miles an hour, then while the plaintiff walked twelve feet it had traveled sixty feet

and was still on the other side of the semaphore when she started to cross Grant Street. On the other hand, if the truck was halfway between the semaphore and the place of the accident when plaintiff started to cross, (as McCormack alone testified), and traveled only twenty-nine feet while she walked twelve feet, then it was going at a rate less than seven and a half miles an hour, which no one would describe as "a pretty good rate of speed." The testimony on the whole agrees rather with the plaintiff's and Miss Mc-Cullough's story, and warranted a finding by the jury that the truck was proceeding rapidly westward on Liberty Avenue, and was on the other side of the semaphore when the plaintiff started to cross Grant Street, and disregarding the signal set against it turned southwestwardly past the semaphore into Grant Street striking the plaintiff when she was about one-third across that street. A truck traveling twenty-five miles an hour will cover thirty-six feet in one second of time and in two seconds (while the plaintiff was walking less than nine feet) would travel seventy-two feet or fourteen feet farther than the distance to the semaphore.

Regard must be had to the locus of the accident and to the condition of traffic at that point. It happened at the intersection of Grant Street, Union Station driveway and Liberty Avenue, one of the busiest sections in the city. Grant Street enters Liberty Avenue at an acute angle on the west, and meets the station driveway almost at a right angle; and the latter enters into Liberty Avenue at an obtuse angle on the west. Both end in Liberty Avenue. Grant Street is sixty feet wide, with a roadway thirty-six feet wide and two street car tracks which turn northwestwardly into Liberty Avenue, and also northeastwardly into Liberty Avenue. Liberty Avenue is eighty feet wide with a roadway forty-eight feet wide and two car tracks with

spurs which turn southeastwardly into Grant Street and also southwestwardly into Grant Street, leaving a triangular space between them, in which the semaphore signal before mentioned was placed. The station entrance way is about one hundred and seventeen feet wide with a roadway eighty feet wide. Miss Mantia walked northwardly on the west sidewalk of Grant Street until she came to its intersection with Liberty Avenue and the station driveway, where she met Miss McCullough, who was also going to the railroad. They turned there in order to cross Grant Street, stopped at the curb and looked for approaching traffic. They had to be on the lookout for traffic in six directions, viz: vehicular traffic and street cars going east on Liberty Avenue and turning into Grant Street, and the reverse; vehicular traffic and street cars going west on Liberty Avenue and turning into Grant Street, and the reverse; traffic from Union Station driveway turning into Grant Street, and the reverse; and also had to be observant of traffic from Liberty Avenue going east and turning into the station driveway, and the reverse; and traffic from Liberty Avenue going west and turning into the station driveway, and the reverse, to see that they did not turn into Grant Street. The plaintiff could not, therefore, devote her attention exclusively to the traffic in any one direction; she was required to be watchful of the traffic moving in other directions as well.

When the plaintiff, as was her duty, looked to the left, from which direction vehicles would first come, and saw none approaching her from Liberty Avenue, and the semaphore set against any traffic from that direction, she was justified in starting to cross and directing her attention chiefly to the traffic that was likely to move from the station driveway into Grant Street and from Grant Street into the driveway and Liberty Avenue; and cannot be held to be contribu-

torily negligent, as matter of law, because she did not notice a truck driven at a rapid rate of speed past the signal which she knew was set against traffic from that quarter. The case is rather governed by the principles laid down in Mooney v. Kinder, 271 Pa. 485, where traffic conditions were somewhat similar, but not as complicated as here, and the Supreme Court said, speaking through Mr. Justice SCHAFFER: "Under the traffic conditions with which she was confronted, it cannot be said as a matter of law that plaintiff was bound to keep her attention fixed on Graeme Street [here, Liberty Avenue]; whether she was contributorily negligent in not doing so was for the jury" [pp. 487-8]. See also, Rosenthal v. Phila. Phonograph Co., 274 Pa. 236, 239; Gilles v. Leas, 282 Pa. 318, 321; Twinn v. Noble, 270 Pa. 500, 503; McKenzie v. Campbell, 84 Pa. Superior Ct. 112, 113.

The verdicts of the jury determined that in the circumstances here present and under the evidence presented in this case, the defendant was guilty of negligence and the plaintiff was free of contributory negligence, and they should not have been disturbed.

The cases cited by the defendant of persons being injured immediately upon stepping on a railroad or railway track have no application here. This defendant had no primary right to the use of the street; and the case of Watson v. Lit Bros., 288 Pa. 175, where a pedestrian was hit, as soon as he stepped into the cartway, by a slow moving truck plainly traveling for a long time in that direction is easily distinguishable on the facts.

The assignments of error are sustained. The judgments are reversed and are hereby entered upon the verdicts in favor of the respective plaintiffs.