Rogers et ux., Appellants, v. Phila. R. T. Co.

534

Argued October 22, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAW-
THROP, CUNNINGHAM and BALDRIGE, JJ.

*Emanuel Friedman,* for appellant.

*S. Regen Ginsburg,* and with him *J. J. K. Caskie,*
for appellee.

OPINION BY GAWTHROP, J., December 12, 1929:
Plaintiffs, husband and wife, recovered separate
verdicts and judgments for damages resulting from
personal injuries sustained by them in a right angle
collision between the Chevrolet sedan in which they
were riding and a car of defendant. From the action
of the court below in entering judgments for defendant
non obstante veredicto, these appeals are taken.

The collision occurred about eight o'clock on the evening of October 7, 1927, at the intersection of Arrott Street and Penn Street, in Philadelphia. The width of each street between the curb lines is twenty-six feet and the width of the sidewalks is seven feet. Defendant's cars run east on Arrott Street. The husband plaintiff testified at the beginning of his direct examination that while he was driving north on Penn Street at the rate of about ten miles an hour he looked to his left as he approached Arrott Street and saw the car about halfway between Penn Street and Leiper Street, which street is two hundred and forty feet west of Penn Street; that the car was "going pretty fast. I do not know what speed it was going;" that he proceeded to go across, thinking that he had plenty of time. He continued thus: Q. "When you reached the house-line of Arrott Street, what did you do? A. I looked to the left. Q. How far west on Arrott Street could you see? A. I could see the middle of the block. Q. How far was the car away? A. The number of feet I could not tell you. Q. How many feet? A. I could not tell you. Q. Approximately? A. Approximately about sixty feet, maybe seventy-five. Q. Where were you when the car was sixty or seventy-five feet away? A. I was on the track. Q. Where was the car, if you know, just before you went on the street car track? A. Well, you cannot see much before that, there is a wall there that obstructs your view. Q. Did you look for the street car just before you went on the street car track? A. Absolutely. Q. Where was the street car at that time? A. When I was about going on the track it was about sixty or seventy-five feet, somewhere along there. Q. How rapidly did you proceed across the street car track? A. I was going about ten miles an hour. Q. Could you tell the speed of the street car? A. No. Q. After your automobile was struck by the street car, what happened? A. It

carried me down. Q. How far did it carry you? A. I would say more than the length of the car. Q. What happened to your automobile ......? A. It was smashed all in the rear." At the beginning of his cross-examination he testified that when his automobile arrived at the south building line of Arrott Street he saw the car about halfway between Leiper and Penn Streets. When he was asked to state the distance in feet he said, "I would say sixty feet ......" Q. "Do you know what the curb line is? A. Yes, sir. Q. Did you look then? A. I would say yes. Q. How far was the car away from you then? A. I would not say how many feet ...... Q. It was closer to you when you got to the curb line than when you were at the building line, is that right? A. Certainly, absolutely ...... Q. About how far away was it then? A. About fifty feet. Q. Did you look when your machine arrived at the first rail of the tracks? A. I looked forward. Q. You did not look to see where the street car was when you got to the tracks? A. No use. Q. Isn't this what happened: When you got to the building line you looked and you saw this trolley car eastbound on Arrott Street about sixty feet away from your machine? A. Yes, sir. Q. You continued across, and when the machine arrived at the curb line the trolley car was fifty feet away from you? A. Yes, sir. Q. You continued to cross, and when your machine arrived at the tracks you did not look, you thought you could cross safely? A. Yes."

The wife plaintiff was sitting on the front seat with her husband and was familiar with the intersection. She testified that she first saw the car when it was halfway between Penn and Leiper Streets, but that she could not tell where the automobile was at that moment; that when the latter was at the building line she looked to see if the car was coming, because "that was a very dangerous place there;" and that the car

was coming "very fast," but she said nothing to her husband. Q. "Did you look again when the machine arrived at the curb line, as you crossed the street? A. I couldn't say that now. Q. The car was getting closer? A. It was getting closer, but had that car—if it had come across easier we never would have been hit. Q. The car was going fast? A. I do not know how fast, it was coming fast, certainly ...... Q. Did you look to see where the car was when the machine arrived at the first rails of the tracks? A. Well, no, I didn't pay much attention."

The case involves no new principle of law, but merely the application of familiar doctrine to the facts. Construing the evidence in the light most favorable to appellants, it seems clear that both of them were negligent. They first observed the car on their left when it was about one hundred and twenty feet away, and rapidly approaching the point at which they attempted to cross. The car was but fifty feet from that point and moving rapidly, when the automobile was at the curb line, and the driver proceeded to cross the track at a speed of ten miles an hour. There was an arc light on the corner and the motorman and the driver of the automobile were in plain view of each other. While the former might have avoided the accident, his car had the superior right of way on its own tracks. If he saw the automobile slowly approaching the track, he had the right to assume that it was the intention of its driver to stop and permit the street car to pass, but the driver of the automobile had no right to assume that the car would stop short of the crossing. But even if the motorman was negligent in failing to stop the car after he saw that the automobile was in a position of danger, the driver of the automobile was also negligent in failing to stop immediately before proceeding on to the tracks when he saw the car approaching rapidly at a distance of fifty feet.

As the wife plaintiff was sitting in the front seat with the driver and had the same opportunity as the latter to see the danger which was plainly imminent and failed to protest or object to attempting the crossing at the time, she is thereby deprived of her right of action: Otis v. Kolsky, 94 Pa. Superior Ct. 548; Griffiths v. Lehigh Valley Traction Co., 292 Pa. 489; Kirschbaum v. P. R. T., 73 Pa. Superior Ct. 536; Gallup v. Pittsburgh Rys. Co., 295 Pa. 203; Lits v. Phila. R. T. Co., 97 Pa. Superior Ct. 344.

The judgments are affirmed.