Galliano *v.* East Penn Electric Co., Appellant.

Argued February 8, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

500

*Otto E. Farquhar,* with him *M. M. Burke,* for appellant.—The testimony describing the rate of speed as "terrific" or "tearing down" is not evidence of negligence or excessive speed: Stoudt v. Traction Co., 97 Pa. Superior Ct. 295; Yingst v. Ry., 167 Pa. 438.

If the auto ran into the trolley car, there was no negligence on the part of the trolley company: Schuchalter v. Traction Co., 288 Pa. 189.

A trolley car has the primary right of way along the street or highway: Rogers v. Traction Co., 97 Pa. Superior Ct. 533; Gilmartin v. Transit Co., 186 Pa. 193; Thatcher v. Traction Co., 166 Pa. 66.

*John B. McGurl,* with him *Charles E. Berger,* for appellee.—The auto being in the intersection before the trolley car started, it was the duty of the motorman to permit the auto reasonable opportunity to cross, and his failure so to do was negligence, regardless of the speed of his trolley car: McGlinchey v. Steigerwald, 73 Pa. Superior Ct. 520, 522; Malter v. Kennedy, 94 Pa. Superior Ct. 254, 256; Gilles v. Leas, 282 Pa. 318; Newman v. Motor Service Co., 298 Pa. 509; Reitmer v. P. R. T. Co., 94 Pa. Superior Ct. 509.

The responsibility rests with the drivers to so handle their cars as not to injure those already in the street:

Gilles v. Leas, 282 Pa. 318, 320. See also McGlinchey v. Steigerwald, 73 Pa. Superior Ct. 520, 522; Malter v. Kennedy, 94 Pa. Superior Ct. 254, 256; Schmidt v. P. R. T. Co., 253 Pa. 505.

When the motorist, on reaching the west line of Center Street, and again at the curbline, saw the trolley car standing, the traffic light green and the way clear, he was entitled to proceed and had a right to assume that when he had committed himself to the crossing the motorman would exercise reasonable care and would not run into him: Reitmer v. Traction Co., 94 Pa. Superior Ct. 509; Bickley v. Traction Co., 56 Pa. Superior Ct. 113, 117; McMahen v. White, 30 Pa. Superior Ct. 169; Ryan v. Ardis, 190 Pa. 66; Sheetz v. Traction Co., 49 Pa. Superior Ct. 177; Richards v. Transit Co., 299 Pa. 163.

OPINION BY MR. JUSTICE MAXEY, April 13, 1931:

This is an action in trespass by the plaintiff against the defendant to recover for personal injuries resulting from the collision of an automobile with a street car at 8:55 p. m., May 24, 1927, in Pottsville. The plaintiff was one of four guests in this automobile, and she sat in the rear seat. The automobile was proceeding easterly on Market and toward Center Street. At this intersection there is an automatic electric traffic light. A trolley car of the defendant company was standing on Center Street at the north line of Market Street as the automobile came toward Center Street. The street car was then put in motion, in response, so the motorman and a policeman testified, to a green light signal. According to the testimony in behalf of plaintiff, the automobile had the right of way at this time and a red light was displayed toward the street car on Center Street. Plaintiff's witnesses testified that the trolley car was crossing the intersection at a speed of from ten to fifteen miles an hour. Defendant's witnesses said it was running from three to five miles an hour. In behalf of

the plaintiff, it was testified that the automobile entered the intersection at the rate of eight to ten miles an hour, that when within two or three feet of the trolley car the driver of the automobile applied the brakes and the automobile slid and skidded into the side of the trolley car. The testimony for the plaintiff is that the motor car ran into the street car near the latter's front door. The witnesses for the defendant testified that the impact was near the rear door. As a result of this collision the plaintiff's right hand was injured. It became infected and the amputation of the second finger from the wrist resulted. Plaintiff recovered a verdict for $7,000. Motions for a new trial and for judgment n. o. v. were made, which motions were overruled. Defendant appealed.

The principal question in this case is raised by the third and fourth assignments of error. These relate to the instructions of the court to the effect that even if the motorman of the trolley car proceeded down Center Street at the intersection of Market Street when beckoned by a green light, yet if the automobile was in that intersection it was the duty of the motorman to proceed carefully and guard against injury to the automobile. Appellant argues that this instruction was tantamount to telling the jury that the automobile being in the intersection was a mandate to the motorman to subordinate the progress of his street car to the progress of the automobile.

Such instruction is in harmony with the law of Pennsylvania. A "go" signal at a street intersection confers no authority on either a motorman or a chauffeur who receives this signal to proceed across that intersection regardless of other persons or vehicles that may already be within it. It is not a command to go but a qualified permission,—i. e., a permission to proceed lawfully and carefully in the direction indicated. It does not mean that the person receiving the signal may proceed without a care or thought as to the safety

of others who may be in his path.  For example, a "go" signal would not authorize a motorman or chauffeur to run his car over some pedestrian who had suddenly fallen into the pathway of the oncoming car—if he could possibly avoid doing so.  While the Motor Code of Pennsylvania declares in effect that a driver of a motor vehicle may drive it at a speed of forty miles an hour under certain conditions, this does not mean, under the conditions stated in the Code, that a driver of an automobile can drive his car forty miles an hour if factors appear in the pathway which would cause a reasonably careful driver to drive at a reduced speed.  If a driver of an automobile was proceeding on an open country road at forty miles an hour and children should suddenly appear in the roadway a few hundred feet ahead of him, it would be his duty to reduce his speed to a rate that would enable him to stop his car before striking any of the children under any contingency that would be reasonably likely to arise in that situation.  It is the duty of the driver of a street car or a motor vehicle at all times to have his car under control, and having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances.  An aviator driving his airplane at a speed of one hundred or more miles an hour under conditions where he could see a clear airway a score or more miles ahead of him would have his plane "under control," for in those circumstances there would be no reasonable probability of a collision with some other airship.  If, however, the airway in that vicinity contained many other airplanes, it would be the duty of the aviator to slow down his speed so as to enable him to avoid collision with them.  A street car proceeding through a crowded street is not under control, even though it might be running at a speed of only ten or fifteen miles an hour, when at such speed it could not be stopped without striking some per-

son who in those circumstances would probably be in its path.

In the case before us, a trolley car was proceeding through a street intersection to which the automobile in which plaintiff was riding was already committed (according to the testimony in behalf of plaintiff and this must be taken as verity on a motion for judgment n. o. v.). This automobile was running on a wet pavement. Assuming that the automobile was committed to the crossing before the street car started across it at right angles, the motorman's duty under the circumstances was to reduce the speed of his street car sufficiently to enable the automobile to pass in front of him in safety. If the autoist entered the intersection first, he was justified in assuming that his right of way was superior to the street car's, even if the green light had beckoned the street car after the automobile entered the intersection. That it is the duty of a street car not yet in an intersection to yield to the rights of other vehicles entering such intersection is settled in Pennsylvania. The court below well said in its opinion refusing a new trial: "The superior right of way at street intersections, controlled by traffic officers or signals, belongs to that vehicle, trolley car or pedestrian whose course is favored by the traffic officer or signal, subject to the rights of those already in the intersection." The court cites Gilles v. Leas, 282 Pa. 318; Mantia v. Pearlman, 91 Pa. Superior Ct. 478; and Newman et ux. v. Protective M. S. Co., 298 Pa. 509. In the recent case of Hughes et ux. v. Pittsburgh Trans. Co., 300 Pa. 55, this court held when a taxicab carrying a passenger stopped so that the left rear wheel was between the two rails of the trolley track, and while so situated and before the passenger had alighted from the taxicab a trolley car of the railway company, whose motorman could have plainly seen if he had been even slightly observant that the wheel of the taxicab was between the rails of the track on which his trolley was running, and who had ample time to

stop his trolley car, nevertheless ran it forward without stopping, so that it collided with the taxicab wheel, thereby causing the injury resulting in the suit,—that both the taxicab company and the trolley car company were concurrently negligent, and jointly and severally liable to plaintiffs. The court also said that the paramount right of the motorman to use the space between the rails of the trolley track afforded no excuse to the railway company for the clear negligence of its motorman.

In the case before us it is true that the street car did not run into the motor car, but if the motorman knew that the automobile was already in the intersection and obviously headed across it, it was the duty of the motorman not to place his car in a position where the automobile, if the brakes were applied to it, would probably skid on the wet street into the street car. There is practically no difference in legal effect between negligently placing a street car in the path of an oncoming automobile so as to make a collision inevitable and driving a street car into an automobile.

The case of Rogers et ux. v. P. R. T. Co., 97 Pa. Superior Ct. 533, cited by the appellant, is distinguishable from the case before us because in that case the plaintiff was held guilty of contributory negligence in failing to stop before proceeding onto the tracks when he saw the street car approaching rapidly within a distance of fifty feet. Gilmartin v. Lack. Val. Rap. Trans. Co., 186 Pa. 193, is distinguishable because in that case, as this court said: "With the whole street open to her she [the plaintiff] undertook to walk on the track, solely for her own convenience. She persisted in doing so after she knew that a car was coming behind her, and that she could not hear its approach." Thatcher v. Central Traction Co., 166 Pa. 66, cited by appellant, supports the position of the appellee rather than that of the appellant. In that case this court held, citing an earlier case: " 'It is not negligence per se for a citizen to be anywhere

upon such tracks [railways on streets]. So long as the right of a common user of the tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons who, without negligence on their own part, may not at the moment be able to get out of the way of a passing car.' "

The case of Harvey v. P. R. T. Co., 255 Pa. 220, cited by appellant, is distinguishable from the case before us. In that case this court said: "There was no occasion for him [the motorman] to reasonably anticipate a collision, until the instant of its occurrence." In that case the car had proceeded about ninety-two feet along the track from the switch before it reached the point of collision. The effect of this movement would be to bring the car directly within the line of vision of one looking westward, and to show that it was for the time being obstructing the line of travel, and must be taken into consideration by those driving along the street. The court further said in that case: "While the street car was thus moving across Market Street, towards the subway bridge, plaintiff approached in an automobile, and came in violent collision with the front of the car." In the case before us, under the testimony on behalf of the plaintiff, the street car had proceeded from its stopping place only a little more than half the width of a street about forty-eight feet wide. The driver of the automobile testified that he drove into Center Street very slowly and the trolley car was then standing at the corner, that the green light was still turned toward the automobile, and that the automobile was only two or three feet from the car tracks when he saw the trolley car. He was still headed straight across the track, though he had not yet reached the track, preparatory to making a turn north on Center Street. He then saw the car coming. He put on both brakes. The car skidded straight forward and bumped into the street car. The street car kept on going and tore off the two front

fenders and the bumper of the automobile. The street car continued for about its entire length before it stopped. Under the testimony offered in behalf of plaintiff, defendant was properly chargeable with negligence. The credibility of the testimony was for the jury.

The first and second assignments of error relate to the testimony that the street car "came tearing down" upon the automobile "at terrific speed." The driver of the automobile, Ferruiolo, upon his direct examination testified, without objection, that "we saw the street car coming. It was coming down fast." Later he testified that the street car was going about ten or fifteen miles an hour. Upon cross-examination, he testified that the street car "tore down" on him. There was no motion to strike out this testimony. The defendant filed a request for the court to charge the jury as follows: "The testimony of the plaintiff's witnesses that the street car came tearing down upon them or moved with terrific speed is not evidence of excessive speed." The trial judge answered: "I affirm that, but will have something to say later on." The defendant also requested the court to charge the jury as follows: "The evidence of the plaintiff's witnesses that the trolley car was tearing down the track or operated with terrific speed does not warrant the verdict for the plaintiff, and if under the testimony the jury come to the conclusion there is no other evidence of negligence, the verdict must be for the defendant." The answer of the trial judge was: "I affirm that as it is there stated, but refer back again to what I have said before and to the facts as I have detailed them to you. There are in evidence estimates of speed both of the automobile and of the trolley car, which have been defined to you through other definitions than 'fast' or 'terrific,' but are given in miles and mileage." We see no error in the answers of the court to these requests. The driver of the automobile testified that the street car was proceeding only ten or fifteen miles an hour. We think that the introduction of the words, "fast" and

"terrific," in evidence, did the defendant no harm, as the moderate speed of the car was established. Furthermore, this testimony should have been promptly objected to or a motion to strike out the evidence should have been made. The first and second assignments of error are overruled.

The seventh assignment of error relates to the refusal of the court below to affirm the defendant's tenth point, which was that if the chauffeur, Angelo Ferruiolo, could have seen the moving street car, he was guilty of contributory negligence in operating his automobile so as to come in contact with the trolley car. The negligence of Ferruiolo in this case is of no importance unless his negligence was the sole cause of the injuries sustained by the plaintiff. What defendant asked for was instructions that would in effect make Ferruiolo guilty of contributory negligence. Even if his negligence did contribute to the injuries sustained by the plaintiff, that negligence would not be a bar to plaintiff's recovery. The defendant does not set up any negligence on the part of plaintiff.

On a motion for judgment n. o. v., the testimony should not only be read in the light most advantageous to plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence: Mountain v. American Window Glass Co., 263 Pa. 181.

A defendant charged with negligence is charged with want of care under the circumstances. When there is substantially conflicting testimony as to the circumstances and as to the alleged want of care, the case is one for submission to the jury under proper instructions. The record before us presents such a case so submitted. The motions for judgment n. o. v. and for a new trial were properly denied.

The assignments of error are overruled and the judgment is affirmed.