Schroeder et al. *v.* Pittsburgh Railways Co.,
Appellant.

Argued October 7, 1932. Before SIMPSON, KEPHART,
SCHAFFER, MAXEY, DREW and LINN, JJ.

*D. H. McConnell,* with him *J. R. McNary,* for appellant, cited: Patton v. George, 284 Pa. 342; Crooks v. Rys. Co., 216 Pa. 590; Cunningham v. Transit Co., 240 Pa. 194.

*A. H. Rosenberg,* for appellee, cited: Gilles v. Leas, 282 Pa. 318; Weiss v. Rys. Co., 301 Pa. 539; Neuman v. Reading Co., 283 Pa. 416; Byrne v. Schultz, 306 Pa. 427.

OPINION BY MR. JUSTICE MAXEY, April 10, 1933:

Mrs. Meream E. Schroeder, aged 66 years, was struck by the defendant's street car on November 5, 1929, and severely injured. She and her husband, C. O. Schroeder, filed a suit in their respective rights against the defendant in January, 1930. Mrs. Schroeder died two years later. Her husband as administrator was substituted for her as plaintiff in her own right and the suit proceeded to trial. A verdict was rendered in favor of her husband in his own right in the sum of $4,500. In the other suit the verdict was for the defendant. This is an appeal from the refusal of the court below to enter judgment n. o. v. in favor of the defendant in the suit of the husband in his own right.

The accident happened near the intersection of Liberty Avenue and Sixth Street, Pittsburgh. Plaintiff contended that his wife started northerly on foot across Liberty Avenue at Sixth Street only when the green light beckoned her and that a westbound street car, traveling at reckless speed and without giving warning,

struck her. Defendant claims that Mrs. Schroeder while the street car was running moderately, with the bell ringing continuously, and with the traffic signal in its favor, walked into the side of the street car. A traffic officer who was standing north of the center of Sixth Street at Liberty Avenue at the time of the accident testified that Mrs. Schroeder left the curbstone (on the side opposite the officer) "on the green and it immediately turned" and Mrs. Schroeder continued on her way. On cross-examination this witness said that Mrs. Schroeder was "about the center of the street, just about approaching the first 'dummy' [i. e., the space 6⅓ feet in width between the eastbound and westbound tracks] when the light changed to red and that the car was then thirty feet away from her." He didn't see Mrs. Schroeder again until after the accident. There was nothing approaching from the west, but from the east there was a street car "on the other side of Sixth Street." He said that when Mrs. Schroeder left the curb, the street car "had the red light and it was drifting toward the approaching street. Just before it approached the street it had the light to go through and came through." Mrs. Schroeder was walking "right at the yellow pedestrian line." The officer saw Mrs. Schroeder "about to step into the dummy" between the two street car tracks at the same time he saw the street car approaching Sixth Street at twenty or twenty-five miles an hour. He said he heard no bell ring. The car as it passed blocked the officer's view of Mrs. Schroeder. He heard the brakes applied to the car to stop it and when he went to the other side of the car he saw Mrs. Schroeder lying on the street back about one-third the length of the car.

The motorman testified that when he last saw Mrs. Schroeder before she was injured he was about fifteen or twenty feet from the east end of the loading platform. She was alongside the street car. He was about to stop the car at the loading platform and was traveling only ten miles an hour. He felt something bump the side of

the car and he then stopped the car after running a few feet further.

Another witness saw Mrs. Schroeder between the two tracks when the street car was at the east end of the platform. He said the woman "wasn't paying any attention to traffic at all."

A passenger sitting in the left, i. e., south, side of the street car saw Mrs. Schroeder leave the second track and come toward the street car. He heard the "bump" as she came in contact with the car and he said the part of the car that "hit her" was the "left side about the third window back." He stated that the car was running slowly at the time and proceeded only about five feet after the bump. The car was at the time near the loading platform. He said: "The side of the car hit her side and she fell back."

Another witness said the car was "almost to a dead stop when it hit" Mrs. Schroeder, and that "she was struck from the left front of the car, her right shoulder. She was just about to step on the car track." From the time the witness first saw Mrs. Schroeder "she just kept right on going" until she was struck. Another witness said it was "about the second window from the front" which struck Mrs. Schroeder.

In this case the only evidence of defendant's negligence is the testimony of the officer that at the time of the accident the car proceeded at a speed of twenty or twenty-five miles an hour and the motorman rang no bell. This testimony though contradicted by several witnesses was sufficient to carry the case to the jury on that phase of the case.

Upon the question whether or not Mrs. Schroeder was herself negligent, we think that the only conclusion that can be legitimately drawn from the evidence is that she was; it should therefore be so declared as a matter of law.

In the face of the positive testimony of several apparently disinterested eyewitnesses that Mrs. Schroeder

walked into the street car, the officer's testimony, on which plaintiff relies, is not sufficiently favorable to the plaintiff to carry the case to the jury. This officer's last view of Mrs. Schroeder before the accident was when she "had one foot on the dummy." She was therefore at a place of safety. With the car coming "with the green light," as the officer described it, thirty feet away, it was her duty to remain at that place of safety until the car passed, just as it would have been her duty to have remained on the curb if the signal light had then been against her and a street car or motor car was about to cross her prospective path. The officer didn't see Mrs. Schroeder when she came in contact with the street car, for the car was then between them. When the officer next saw her she was lying on the street.

None of the witnesses described Mrs. Schroeder as being *in the path of the street car* when they last saw her before she was hit. She was not in danger and would not have been injured if she had stopped where the traffic officer last saw her. She got into danger by continuing on her way when an attentive and cautious person would have stopped. We must accept appellant's contention that "a pedestrian who is in danger through no fault of his own and who is in plain view may assume that traffic will not run him down, but he may not assume it if, being out of the line of traffic, he steps into it when traffic is close upon him."

The case of Wack v. P. R. T. Co., 93 Pa. Superior Ct. 206, is distinguishable from this case for in that case there was no evidence of inattention on the part of the victim, she was relying on the traffic officer's direction of traffic and had no reason to apprehend that the street car would run her down. Furthermore, she had no alternative but to continue on her way for, as Judge KELLER pointed out in his opinion, "Had she then stood still or attempted to go back her condition might have been worse, for she would have been right in the path of the trolley or of moving automobiles traveling east-

ward on the north side of the track." In the case before us all that Mrs. Schroeder had to do as the street car approached was to remain for a few seconds exactly where she was.

The case of Gilles v. Leas, 282 Pa. 318, 127 A. 774, cited by appellee, reiterates the principle that a driver of a motor vehicle even with the light in his favor cannot with impunity run down a pedestrian in his path. This is a salutary principle and applies to motormen as well as automobile drivers. This court recently said in Galliano v. East Penn Electric Co., 303 Pa. 498, 154 A. 805, that "A 'go' signal at a street intersection confers no authority on either a motorman or a chauffeur who receives this signal to proceed across that intersection regardless of other persons or vehicles that may already be within it. It is not a command to go but a qualified permission,—i. e., a permission to proceed lawfully and carefully in the direction indicated. It does not mean that the person receiving the signal may proceed without a care or thought as to the safety of others who may be in his path."

If the motorman had seen Mrs. Schroeder walking into the path of his car, it would have been his duty to have stopped, if possible, before hitting her, but she walked not into the pathway of the car but into its side. The motorman averred that when he saw Mrs. Schroeder he "didn't need to stop," obviously meaning that she was not then in danger and that he had no reason to apprehend that by her inattention she would soon be there. He had a right to assume that she would exercise common prudence and not walk into either the front or side of his car.

Newman et ux. v. Protective Motor Service Co., 298 Pa. 509, 148 A. 711, cited by appellee, holds that "the signal in the pedestrian's favor, inviting him to cross, warrants his so doing, and he is justified in relying upon the assumption that motor vehicles, warned by the traffic signal set against them, will not disregard it and run

him down." In that case the driver of the motor vehicle, unlike the driver of the street car in this case, had the traffic signal against him. Furthermore, in that case the two pedestrians, husband and wife, not only got a signal from the traffic light permitting them to cross a street 27 feet wide but they also observed numerous motor vehicles obeying the red light set against traffic up and down that street, and therefore they were justified in assuming that they could cross in safety. If the light had changed (which it did not) while they were still in the street and there was no zone of safety in the middle of the street, they would have had a right to continue on their way in the belief that the then standing motor traffic would give them time to reach the opposite curb. In the case before us the street car was moving in obedience to the traffic signal and Mrs. Schroeder then at a place of safety in a street sixty feet wide should have remained there until the street car had passed.

It is clear, first, that Mrs. Schroeder was not warranted in assuming that because the green light was in her favor when she left the curb to cross a busy sixty-foot street, she had an absolute right of way for that entire distance, and was relieved from all duty of attentiveness to traffic up and down the street; second, that when she reached a place of safety, half way across the street and a street car was approaching on a green signal, she should have seen it and awaited its passing; and third, that the motorman had no reason whatever to apprehend that Mrs. Schroeder would step in front of his car or into the side of it, and therefore he exhibited no want of due care in proceeding. If a motorman is obliged to stop his car every time a person gets so close to it that it is *possible* for that person to walk into it, street car traffic in cities would become impracticable.

When a motorman is faced with the *obvious* alternative of stopping his car as soon as he can or running into or over someone, his duty is so plain as to admit of no argument. But such was not the situation here.

The judgment is reversed and herein entered for the defendant.

Mr. Justice SIMPSON and Mr. Justice LINN dissented.