Johnson, Appellant, *v.* Butler.

Argued October 4, 1935, re-argued November 11, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Frank J. Eustace, Jr.,* with him *Wilson & McAdams,* for appellant.

*Algernon R. Clapp,* of *White, Maris & Clapp,* with him *Wayland H. Elsbree,* for appellee.

OPINION BY CUNNINGHAM, J., January 31, 1936:
Plaintiff's husband, Raymond Johnson, while attempting to cross Frankford Avenue, on foot, at its

intersection with Tioga Street, in the City of Philadelphia, was struck and killed by an automobile owned and operated by Thomas P. Butler, the defendant.

The accident occurred at 7:30 on the evening of December 22, 1930. Plaintiff and decedent were married May 5, 1923. During the six years preceding his death, plaintiff's husband had not lived with her, nor had he contributed anything to her support, with the exception of $64 paid under the compulsion of a court order.

At the trial of plaintiff's suit for damages, based upon her claim that her husband's death was caused solely by the negligent operation of defendant's car, the trial judge refused defendant's point for binding instructions and submitted to the jury the questions of his negligence and decedent's alleged contributory negligence. The verdict was in favor of plaintiff for the sum of $1,200, but defendant's motion for judgment in his favor upon the whole record notwithstanding the verdict was subsequently granted and we now have this appeal by the plaintiff. Two grounds were assigned by the trial court in support of its judgment in favor of the defendant; absence of proof of negligence upon the part of defendant, and, in any event, such clear and positive proof of decedent's negligence that binding instructions should have been given.

As the most interesting legal question here involved is whether the court below was justified in holding that decedent had been negligent as a matter of law, we shall consider that phase of the case first.

We find no substantial conflict in the evidence relating to the circumstances under which the accident occurred. Frankford Avenue is a north and south street with a cartway wide enough to accommodate four cars and having double street railway tracks laid thereon. Tioga Street runs east and west; it is narrower and intersects Frankford Avenue at right angles; the inter-

section is lighted by an arc light and protected by traffic signal lights.

Decedent was struck while upon the north pedestrian crossing of Tioga over Frankford by defendant's car traveling north on Frankford in the northbound street railway track; at the moment of impact he was standing inside of, but near, the left-hand rail of the northbound track and facing west; when defendant's car stopped, within its length, decedent was lying in the dummy between the trolley tracks with his head near the left rear wheel of defendant's car.

When defendant, with a companion, Joseph Moran, Jr., seated beside him, reached the south side of the intersection, these traffic conditions existed.

The traffic lights were green for Frankford and red for Tioga; two automobiles, one behind the other, were coming south on the west side of Frankford and were then approaching the north side of the intersection; the first of the automobiles coming south, referred to as having unusually bright lights, passed on; the second, driven by James L. McCuen, one of defendant's witnesses, stopped after the accident. Upon the east side of Frankford and just north of Tioga two automobiles were parked between the northbound trolley track and the east curb. Defendant, traveling at a rate of approximately twenty-five miles per hour, continued across the intersection. Moran, defendant's companion, testified that, by reason of the bright lights of the car going south, he did not see the decedent until defendant's car was within five feet of him; that he then yelled, "There is a man in front of you," and defendant applied his brakes "and turned as quick as he could in that short distance." This witness continued: "Q. When you first saw him you said he was about how far away from your car? A. About five feet. Q. And where was he at that time? A. He was standing in the dummy of the tracks facing west. Q. And while you traveled that

five feet did you observe any movement on his part? A. Yes, he was facing west watching traffic coming from the north. Q. That is, these two cars you say were coming down? A. These two cars and he was stepping out of the way of the first one and he stepped backwards without looking. Q. When he stepped back without looking he stepped to the east? A. To the east. Q. And that was backwards for him? A. Yes. Q. And that was right into your car? A. Yes."

Defendant's testimony before the coroner was introduced by plaintiff as a part of her case. He there testified: "A. I was going north on Frankford Avenue. When I got to the intersection of Tioga and Frankford Avenue I noticed the traffic light was turned for me to go. I was travelling about twenty-five an hour. Moran was sitting next to me. He said, 'There is man in front of you.' I looked up and tried to avoid it but it was impossible. I immediately took him to the hospital and that was all. Q. You say you looked up. Where were you looking at the time of the accident? A. I looked at the traffic light and it was green and then looked down. Q. You had passed the traffic light at the time? A. Yes. Q. How close was he when you first saw him? A. About two feet. Q. Where was he at that time? A. He seemed to be right on the west rail of the northbound tracks. Q. That is the track you were on? Was he standing or moving? A. Seemed to me he was standing. Q. If the man had stood still would you strike him? A. Can't tell. I thought he was standing still when I hit him."

The only variation in his testimony at the trial was that decedent when he first saw him "was between the tracks, in the dummy" and that "he appeared to take a step backwards; he was facing west when I saw him."

Plaintiff averred in her statement of claim that decedent was crossing Frankford from the east to the west curb, but we find no testimony upon this record placing

decedent, at any time that evening, east of the north-bound trolley track. On the other hand, there was positive and uncontradicted testimony (hereinafter referred to) that he was endeavoring to cross from west to east and the fact that he was facing west when struck was accounted for by the explanation that he turned around when half way over.

Three disinterested witnesses were called; one by plaintiff and the others by defendant. James Gallagher, called by plaintiff, was selling Christmas trees on the northwest corner of Frankford and Tioga. His testimony was that he "didn't actually see the man get hit," but heard a noise and when he turned around saw decedent lying "about the center of the street." The only other testimony submitted in behalf of plaintiff related to the domestic affairs of plaintiff and decedent and to decedent's earnings during the year preceding his death.

It may be noted, in passing, that the evidence in behalf of plaintiff placed her husband near the center of the north pedestrian crossing with a red traffic light against him and traffic moving through the green lights. No attempt to show how he got there was made by plaintiff. She relied solely upon the presumption of due care by a decedent.

John Pogson, an acquaintance of the decedent and one of defendant's witnesses, was standing on the west curb of Frankford, about twenty feet north of Tioga, waiting for the traffic lights to change in order that he might cross over to his car which was parked on the east side of Frankford. An excerpt from his testimony reads: "Q. And what did you see? A. And the man run across the street. He started across the street and I looked and I saw who it was. Q. And who was it? A. Johnson. Q. Then he was running across the street and what else did you see? A. There was a machine coming down Frankford Avenue with pretty bright

lights.  Q. Where did he run with reference to this machine?  A. He ran in front of the machine.  Q. And what did you see after that?  A. I didn't see nothing after that.  I heard a squeal of brakes.  It was like on the spur of the moment, the man [defendant] turned around and I helped to pick the man up and they took him down to the hospital."  The witness explained that his view of the accident was obstructed by the car going south.

McCuen, above referred to as the driver of the second car coming south on Frankford, was a police officer and testified: "Q. Do you remember what traffic there was southbound on the southbound track ahead of you?  A. Well, there were several cars I could see ahead of me but there was one car right ahead of me and I could see this man Johnson standing in between the two rails [tracks].  Q. When you first saw him where was he?  A. In between the two rails.  Q. Between the north and southbound rails?  A. In the dummy, yes, sir.  Q. When you first saw him what way was he facing, east or west?  A. Facing west.  Q. What did you see after that?  A. When I got within about fifty feet of the north crossing of Tioga I seen him standing there, the first car ahead of me passed him, he stepped back into the northbound rail and as he did this man Butler hit him.  Q. You were about fifty feet away from him at the time?  A. Not at that time.  Q. When you first saw him?  A. When I first saw him.  Q. You were traveling about what rate of speed?  A. About twenty-five miles an hour.  Q. And Butler was traveling about what rate of speed?  A. About the same.  Q. And the traffic light was how?  A. Green for Frankford Avenue.  Q. And you said that as the car in front of you, the southbound car in front of you, passed, Johnson stepped back?  A. Right into the northbound rail and it happened that quick.  Q. At the time that Johnson stepped back into the north rail— A. I was about even with

him right then. Q. And about how far away from him was Butler? A. Well, he must have been, you know, right on top of him. Just as he stepped there—not over a few feet—just as he stepped back he got him."

In the course of his opinion supporting the judgment appealed from, the learned trial judge, FINLETTER, P. J., said: "We think, too, that judgment should be entered for the defendant on the ground of Johnson's contributory negligence. What other description can be given to the conduct of a man who runs across the face of two automobiles, one twenty-five feet to the north and the other but a little more to the south, with no halfway place of refuge but a precarious station in the dummy between the tracks? And who does this in the face of the danger signal of a red light. And finally, who when in the dummy steps backward into the path of a moving car five feet off. It is no answer of fact to this to say that defendant's account at the coroner's hearing was that deceased seemed to be standing when he was hit, for this would have the decedent standing in the northbound track. To be hit by a car in the tracks requires that he must have been there. Whether he stood there or stepped back he was equally careless. The evidence requires us to declare that the decedent was guilty of negligence as a matter of law."

We are not unmindful of the principle of law that Johnson's death, and consequent inability to testify regarding his conduct immediately prior to the accident, raises a presumption that he exercised due care. The only question here is whether the evidence, which, in our opinion, demonstrates decedent's negligence, was of such character as to justify a court in holding that the presumption had been rebutted as a matter of law. The conclusion that decedent was negligent does not rest alone upon verbal testimony in behalf of defendant. As above indicated, the testimony adduced by plaintiff placed him in the middle of the crossing with a red light

against him. The testimony of defendant's witnesses was clear, positive and uncontradicted. The proven facts admit of only one inference. A majority of the members of this court are of opinion that the court below did not err in entering judgment, n. o. v., upon the ground that plaintiff's husband had been negligent as a matter of law. Lieberman et al. v. Pittsburgh Rys. Co., 305 Pa. 412, 416, 157 A. 905; Cubitt v. New York Central R. R. Co., 278 Pa. 366, 371, 123 A. 308; Hazlett v. Director General of R. R., 274 Pa. 433, 436, 118 A. 367; Schmidt v. Phila. & Reading Ry. Co., 244 Pa. 205, 90 A. 569; Taylor v. P. R. T. Co., 111 Pa. Superior Ct. 575, 170 A. 327; Schroeder et al. v. Pittsburgh Rys. Co., 311 Pa. 398, 165 A. 733; and Peiffer et al. v. Kreider, 111 Pa. Superior Ct. 30, 169 A. 399.

In view of this conclusion, it is unnecessary to consider either the question of defendant's negligence or whether plaintiff proved she had any reasonable expectation of pecuniary advantage which was destroyed as a result of the accident.

Judgment affirmed.