## DAYTON (city) v CHRIST

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1637. Decided May 3, 1940.

Ernest W. Kruse, Dayton, for plaintiff-appellee.

Estabrook, Finn & McKee, Dayton, for defendant-appellant.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Municipal Court of the City of Dayton.

The defendant Christ was arrested on an affidavit charging him with the unlawful operation of a motor vehicle on Summit Street in the City of Dayton, Ohio, in that he operated his Chevrolet coach without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles and so as to endanger the life, limb and property of persons in the lawful use of said public thoroughfare in the following particulars, to-wit:

"That he drove northwardly on Summit Street and ran through a red traffic light at Fifth Street and collided with a Chevrolet coach which was being operated westwardly on West Fifth Street. Said Chevrolet coach being the property of Emil Julius Enonin, contrary to Section 307 of the Code of General Ordinances, etc."

Upon arraignment, the defendant entered a plea of not guilty. December 28, 1939, after hearing, defendant was found guilty and sentenced.

Motion for new trial was duly filed, overruled and thereafter notice of appeal given to our court.

Bill of Exceptions was filed which presents all the evidence taken in the case.

The assignments of error state six separately numbered specifications. However, but one ground of error is urged in the brief, as follows:

"That the judgment of the court below was unsupported by the evidence and manifestly against the weight of the evidence."

The General Ordinance of the City of Dayton under which the prosecution was instituted, reads as follows: °

"Whoever operates a motor vehicle upon the streets, alleys, boulevards or other public ways or premises in the City of Dayton, Ohio, without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles and so as to endanger the life, limb or property of any person or persons while in the lawful use of the streets, alleys, boulevards or other public ways or premises of said city, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished as provided in Section 305 of the Code of General Ordinances of the said city."

There was little, if any, dispute on the evidence. The real complaint is that the court applied inferences not warranted under the state of the record.

The nature of the error complained of requires a very full and careful reading of the transcript of the testimony. This we have done.

The prosecution presented two witnesses and the defendant two besides himself. The first witness called by the prosecution was Emil Julius Emonin. Mr. Emonin was a young man, twenty-four years of age, married and has two children. On October 11, 1939, at about four o'clock in the afternoon, he was driving his 1936 Chevrolet in a westerly direction on Fifth Street. No one was with him at the time. As he approached the intersection of Fifth and Summit Streets, the traffic light located overhead in the center of the street was red and he stopped rather close to the curb. Also stopping for this same light and moving in the same direction, was a large freight truck. This truck was very long and high and located to Mr. Emonin's left and towards the center of the street. By reason of the size of the truck and its position in the street, Mr. Emonin was unable to see traffic approaching from the south on Summit Street. When the light turned green, the driver of the truck started forward, as did Mr. Emonin. The truck moved only a few feet and again stopped. Mr. Emonin proceeded to go through, with the result that he collided with the automobile driven by the defendant Christ. The Christ car was moving on Summit in a northerly direction. The impact threw it around so that it was pointed in an easterly direction and near what would be the northerly line of Fifth Street, extended through Summit. The Emonin car came to rest at the northwest corner of the intersection. Emonin testifies that he did not see the Christ car until the moment of collision. After the collision the driver of the truck went on through without stopping and his name was not obtained so as to be called as a witness. Following Mr. Emonin and immediately behind him and in practi-

cally the same position in the street, was Mrs. Kathryn Bowman. She also stopped behind Mr. Emonin, waited for the light to change, and moved forward as the truck and the Emonin car moved forward. She was also behind the big truck and was unable to observe approaching traffic from the south on Summit Street. She gave evidence that the truck moved forward a distance of about five feet and then stopped.

The defendant Christ testified that he was traveling in a northerly direction in his Chevrolet, on Summit Street, and as he approached the intersection of Summit and Fifth Streets the light was against him and he stopped behind another car which had also stopped for the light to change. When the light changed to green the car in front of him moved forward and he followed close behind. The car in front stopped in the center, preparatory to making a left turn on Fifth. This required him to stop, but at that time he was out in the street. Three cars passed through going south, and then the car ahead of him made its turn to the west, after which he moved forward and was struck by the Emonin car. The driver of the car ahead of Mr. Christ was one W. N. Ashman, and with him were two passengers, one Art Stickel by name. Both Ashman and Stickel were called as witnesses and fully corroborated Mr. Christ.

Mr. Ashman says that he could observe through his mirror that Mr. Christ was immediately behind him and out in the street when he, Ashman, stopped to make the left hand turn and was delayed there for a short time in order for southbound traffic to pass through. Mr. Stickel says that he was turned around talking to a passenger in the rear seat of Mr. Ashman's car, and that he saw Christ out in the street, stopped and waiting for Ashman to get out of his way.

The defendant and his two witnesses positively state that he drove into the street on the green.

This gives us a picture of a situation where the light turned green for the west and east bound traffic on Fifth

Street before the defendant Christ had cleared. Christ was delayed by reason of his position behind the Ashman car. Whether or not Mr. Ashman indicated by proper sign that he was intending to make a turn on Fifth Street, is not disclosed. If such signal had been given in proper time, Christ might have pulled to the right of the Ashman car and had passed through before the light changed. But the record is silent on this question as it is on the matter of the width of the street and the possibilities of Christ passing through in front of the truck. The evidence clearly supports the conclusion that the green light was with Mr. Emonin when he started to drive through on Fifth Street.

Under this situation there apparently existed conflicting rights and hence the question arises as to what was the duty of the respective parties under such a situation.

We think the law is well recognized that when traffic properly starts through on a green light, ▮ it has the absolute right to clear even though the light may have turned to amber or red before clearing. Under such a situation it is the duty of traffic moving on an intersecting street and when the light turns in its favor to move out cautiously so as to permit the vehicular traffic caught in the intersection at the time of change of light, to clear. The movement of the big truck would indicate that this was exactly what it did. Upon the change of light, it moved up about five feet and stopped. The driver of the truck was in a position to see the position of the defendant Christ. Mr. Emonin could not see Christ. It is inferable that Emonin may have been in error in proceeding even though the light was in his favor when by reason of his position behind the truck he could not know that Christ was caught in the intersection on the change of lights. If such was the situation, the defendant Christ should have been permitted to clear before Emonin moved through.

"Under the common system of traffic regulation by lights, with the green light as a 'go' signal, a red light as a 'stop' signal, and, frequently a yellow or amber intermediate light, or under any similar system of automatic traffic signals at intersections of streets, an automobile which enters an intersection on the green light is entitled to continue until it clears the intersection even though the green changes to amber and the amber to red before he completes the crossing, while traffic awaiting on intersecting streets the change of lights, must first ascertain whether the intersection is clear before starting across."

2 Blashfield (Perm. Ed.) Section 1005.

"The 'go' signal at street intersection confers no authority to either motormen or chauffeur to proceed across the intersection regardless of other persons or vehicles already within it."

Galliano v East Penn Electric Co., 154 Atl., 805 (303 Pa., 498).

Under this state of the record was the trial court warranted in finding the defendant guilty?

We must start with the proposition that a reviewing court in- ▮ dulges every presumption as to the correctness of the trial court's judgment.

On factual questions a judgment will not be disturbed unless there is a failure of testimony or the determination was so manifestly against the weight of the evidence as to demand a contrary conclusion.

After a careful consideration of all the testimony we are ▮ forced to the conclusion that there was no testimony warranting the court in finding that the defendant Christ violated the traffic regulations, as charged in the complaint.

Not a single witness testified that he entered into this intersecton while the

light was red or amber. There was testimony that before he had cleared the light had changed to "go" for east and west traffic. Would it be proper to indulge the presumption that because he was not through on his go signal that therefore he must have entered on red or amber?

It is a matter of common knowledge and daily occurrence that vehicular traffic starts through on green and the change to amber or red follows so close-ly thereafter that such person is not entirely through the intersection on the green. A rule of reason absolutely must be applied; that is that where such traffic starts through on green it is entitled to clear before waiting traffic starts through.

In criminal cases the rule of proof requires the establishment of guilt beyond a reasonable doubt. Another principle requires the construction of all evidence consistent with innocence. Under the facts of the instant case the most that can be said would be that it was possible that the defendant Christ entered the intersection on the amber or red. To so do would be to ignore the testimony not only of the defendant but all other witnesses who testified and were in a position to know the facts. In a criminal case whenever a court or jury indulges inferences from the proven facts and returns a finding of guilty, such inference will not be supported if the proven facts would just as readily support an inference of innocense.

Under the state of the record, we deem it our duty to determine that the court was in error in finding the defendant guilty; that the judgment of the court should have been not guilty and the defendant discharged. We enter final judgment, discharging defendant and adjudging costs against the city.

HORNBECK, PJ. & GEIGER, J., concur.